# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2213

_____

United States of America,
         *
         *
    Appellee,   *
         *  Appeal from the United States
  v.        *  District Court for the Western
         *  District of Missouri.
Roy  T. Hughes,    *
         *
    Appellant.   *

_____

Submitted:  December 11, 2007
Filed: February 25, 2008 **(Corrected 2/29/08)**

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Roy T. Hughes was charged with being a felon in possession of ammunition. He moved to suppress evidence, asserting the police lacked reasonable suspicion to stop and frisk him. The district court, adopting the report and recommendation of the magistrate, denied the motion. After a conditional guilty plea, Hughes now appeals the denial of the motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court reverses.

## I.

On August 11, 2005, at about 9:31 a.m., a Kansas City police officer was dispatched to an apartment complex on a call of "suspicious parties on the property," in response to an anonymous complaint. The complex is in a high crime area, due to reputed narcotics trafficking. Dispatch described the parties as two black males, one without a shirt, the other wearing a brown shirt and having braids. Dispatch also mentioned a red bicycle. When the officer arrived, he observed Hughes, another male, and a female standing a few feet from a bus stop across the street from the apartment complex. The officer did not recall seeing a bicycle. Hughes and the other male fit the description given by dispatch. The officer stopped all three, questioned what they were doing in the area, then frisked them. The officer felt hard cylindrical objects in one of Hughes's pockets, which he removed and determined were live rounds of ammunition.

At some point the officer did a computer check indicating that Hughes had no warrants, but was under supervision for domestic assault and affiliated with a gang in Omaha, Nebraska. There was conflicting evidence about when the check occurred. The officer prepared two reports, one stating that the check occurred before the frisk, and the other that it occurred after. The officer testified he had no specific recollection of the sequence of events. The district court did not make a finding as to the time of the check, explicitly noting that the "timing of the computer check is not clear."

Hughes was indicted on one count of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). In the report and recommendation on Hughes's motion to suppress, the magistrate found that because Hughes matched the description given by dispatch, the officer had "reasonable, articulable suspicion that defendant Hughes may have been engaged in criminal activity." The magistrate ruled that the frisk was "reasonable under the circumstances" because the officer was

in a high crime area on a call of suspicious parties trespassing, and at some point became aware of Hughes's gang affiliation and domestic assault supervision. The magistrate concluded that the officer was "justified in removing the objects from Hughes's pocket to ensure his personal safety." The district court adopted the magistrate's report and recommendation.

## II.

This court reviews the factual findings underlying the denial of a motion to suppress for clear error, and the determination that the Fourth Amendment was not violated de novo. *See United States v. Janis,* 387 F.3d 682, 686 (8th Cir. 2004).

The Fourth Amendment protects against unreasonable searches and seizures by the government. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). Where a police officer has reasonable suspicion that criminal activity may be afoot, the officer may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion. *Minnesota v. Dickerson,* 508 U.S. 366, 373 (1993), *citing Terry v. Ohio,* 392 U.S. 1, 30 (1968). A *Terry* stop may also be justified if an officer has reasonable suspicion that a crime has previously been committed by an individual. *See United States v. Hensley,* 469 U.S. 221, 229 (1985) (*Terry* stop permitted where police have reasonable suspicion that individual was involved in a completed felony). Reasonable suspicion must be supported by "specific and articulable facts." *Terry,* 392 U.S. at 21. In determining whether an officer had a "'particularized and objective basis' for suspecting legal wrongdoing," this court must look at the totality of the circumstances, allowing officers to draw on their experience and training. *See Arvizu,* 534 U.S. at 273.

"'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether

the person is in fact carrying a weapon.'" ***Dickerson,*** 508 U.S. at 373, *quoting **Terry,*** 392 U.S. at 24. There must be articulable and specific facts as to dangerousness. *See **Sibron v. New York,*** 392 U.S. 40, 64 (1968) ("In the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."). In determining whether the frisk was justified, this court must look to the totality of the circumstances. *See **United States v. Hanlon,*** 401 F.3d 926, 929 (8th Cir. 2005).

The district court found reasonable suspicion to justify a *Terry* stop because: (1) the area was a high crime area, and (2) Hughes matched the description given by dispatch. The officer testified that before he approached, Hughes and the others were standing near a bus stop, and were not engaged in any suspicious activity. Neither the district court nor the government points to any facts that support a reasonable suspicion that a crime was currently taking, or about to take, place. *See **Brown v. Texas,*** 443 U.S. 47, 52 (1979) (presence in a high crime area, without more, does not create reasonable suspicion for a *Terry* stop); ***United States v. Bailey,*** 417 F.3d 873, 877 (8th Cir. 2005), *cert. denied*, 547 U.S. 1104 (2006) (presence in a high crime area, plus officer's observation of suspicious behavior, creates reasonable suspicion for a *Terry* stop). Therefore, to justify this stop, the officer must have been investigating a past crime. The district court found that dispatch "did not provide any details regarding what was suspicious about these parties other than that they were trespassing."[1] This court will thus analyze this case as if the officer was investigating a trespass.

---

[1] In a footnote, Hughes objects that the district court implicitly found that "they were trespassing," arguing that dispatch told the officer only that there were "suspicious parties on the property." This court need not resolve this issue, particularly in light of the deference due findings of fact by the district court. *See **Anderson v. City of Bessemer, N.C.,*** 470 U.S. 564, 573-76 (1985).

In Missouri, trespass in the first degree is a misdemeanor, and trespass in the second degree is an infraction.[2] *See* **Mo. Rev. Stat. §§ 569.140, 569.150**. *Terry* stops are permitted to investigate previous felonies, but the Supreme Court has never decided whether *Terry* stops are justified by a need to investigate previous misdemeanors (or lesser violations). *See Hensley,* 469 U.S. at 229 ("We need not and do not decide today whether *Terry* stops to investigate all past crimes, however serious, are permitted."). *Cf. McFadden v. United States,* 814 F.2d 144,147 (3rd Cir. 1987) (*Terry* stop to investigate a previous trespass, a felony in Pennsylvania, was not unreasonable under the circumstances).

Three other circuit courts have addressed this issue. The Sixth Circuit states that police may not make a stop on reasonable suspicion of a "mere completed misdemeanor." *See Gaddis v. Redford Twp.,* 364 F.3d 763, 771 n.6 (6th Cir. 2004). The Ninth and Tenth Circuits refuse a *per se* standard, and following *Hensley*, balance the individual's interest with the governmental interest on a case-by-case basis. *See United States v. Grigg,* 498 F.3d 1070, 1081 (9th Cir. 2007); *United States v. Moran,* 503 F.3d 1135, 1141 (10th Cir. 2007).

The Supreme Court has "consistently eschewed bright-line rules [under the Fourth Amendment], instead emphasizing the fact-specific nature of the reasonableness inquiry." *See Ohio v. Robinette,* 519 U.S. 33, 39 (1996). Like the Ninth and Tenth Circuits, this court declines to adopt a *per se* rule that police may never stop an individual to investigate a completed misdemeanor. To determine whether a stop is constitutional, this court must balance the "nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *See Hensley,* 469 U.S. at 228; *United States v.*

---

[2] An infraction is not a "crime," but an officer may arrest an individual upon reasonable belief that the individual committed an infraction. *See* **Mo. Rev. Stat. §§ 544.216, 556.021**.

*Brignoni-Ponce,* 422 U.S. 873, 878 (1975) ("[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."). Under this test, the nature of the misdemeanor and potential threats to citizens' safety are important factors. *See Grigg,* 498 F.3d at 1081 (courts must pay particular attention to the potential for ongoing or repeated danger, and risk of escalation); *Moran,* 503 F.3d at 1141 (the governmental interest is particularly strong when the criminal activity involves a threat to public safety).

On the facts here, the governmental interest in investigating a previous trespass does not outweigh Hughes's personal interest. Being stopped and frisked on the street is a substantial invasion of an individual's interest to be free from arbitrary interference by police. *See Florida v. J.L.,* 529 U.S. 266, 272 (2000) (describing a stop and frisk at a bus stop as intrusive and embarrassing); *United States v. Wheat,* 278 F.3d 722, 737 (8th Cir. 2001) (*Terry* stops of vehicles along public roads are intrusions on an individuals liberty interest, but are considerably less invasive than a "frisk on a public corner"). True, a criminal trespass inherently involves some risk of confrontation with a property owner or lessee, implicating public safety concerns. *See Moran,* 503 F.3d at 1142. Standing alone, this risk is not enough to outweigh the individual's strong security interests. *Cf. id.* at 1143 (finding it important that the risk of confrontation was not hypothetical because the property owner had previously confronted the trespasser, and "not suggest[ing] that . . . any stop based on a completed criminal trespass is per se reasonable").

There may be cases where a *Terry* stop is justified to investigate completed trespass, such as where there is a strong threat to public safety. *See id.* at 1142-43 (*Terry* stop justified where there were multiple reports of the same individual trespassing (two on that particular day), the individual was likely armed as he was trespassing to reach hunting grounds, there were previous confrontations between the

trespasser and the property owner, and the trespasser had threatened other local property owners). *Cf. **Bates v. Chesterfield County, Va.,*** 216 F.3d 367, 371 (4th Cir. 2000) (*Terry* stop justified where property owner reported juvenile trespassing, acting weird as if on drugs or drunk, and then running into the woods).  There are no facts here, however, indicating such a threat.  As the officer testified, Hughes and the other two were not acting suspiciously, and there was no report of any property crime, personal crime, or any weapons.  The officer agreed that there was "nothing in Dispatch . . . to imply that this may be a dangerous situation."

This court recognizes "that the police have a manifest interest in identifying the perpetrators of crime, whether the offense be minor or major."  *See **Grigg,*** 498 F.3d at 1083.  The alternatives available to the police also factor in the balance of interests, however.  *See **id***.  Here, the officer had "two less invasive options."  *See **Wheat,*** 278 F.3d at 736.  The officer could have "observe[d] the suspect for a considerable length of time, watching for other indications of incipient criminality that would give [him] reasonable suspicion to make an investigatory stop."  *See **id.***  He also could have "initiate[d] a simple consensual encounter, for which no articulable suspicion is required."  *See **id.*** (the practicality of conducting a consensual interview is to be considered in weighing the government's interest).[3]

The government cites *United States v. Arvizu,* claiming that the stop was justified under the totality of the circumstances.  *See **Arvizu,*** 534 U.S. at 274.  *Arvizu* does not control because it dealt with a possible ongoing crime, not a previous crime.  *See **id.*** at 277 (holding officer had reasonable suspicion to believe an individual

---

[3] As there was nothing to corroborate the anonymous call that Hughes had been trespassing, the officer could not have arrested Hughes upon a reasonable belief that he had committed a misdemeanor or an infraction under Mo. Rev. Stat. § 544.216. *See **Beck v. Ohio,*** 379 U.S. 89, 91-96 (1964) (mere allegation of criminal behavior by unknown informant not sufficient to establish probable cause for warrantless arrest).

driving a van "was engaged in illegal activity"). To the extent *Arvizu* is instructive, it does not support the government's contention that there was reasonable suspicion for a *Terry* stop here. *Arvizu* directed courts to consider the totality of the circumstances, not whether each fact is individually indicative of criminal behavior. *See id* at 274. Unlike this case, however, the facts in *Arvizu*, taken together, strongly indicated criminal behavior: (1) an alarm was tripped near where the van was traveling (usually indicating an attempt to evade a border crossing); (2) the driver of the van stiffened up and avoided looking at the officer; (3) the van slowed from about 50 mph to about 25 mph; (4) the children in the van waived at the officer "mechanically," for about four minutes, as if told to do so; (5) the driver turned the indicator on, then off, then back on before making a quick turn; and (6) there was a report the previous week of bricks of marijuana being thrown from a van. *See id.* at 269-71.

The government invokes *United States v. Roggeman,* 279 F.3d 573, 578 (8th Cir. 2002), to show that the frisk was justified under the totality of the circumstances. In *Roggeman,* the initial *Terry* stop was justified. There was reasonable suspicion for a frisk because the stop was late at night, in a poorly lit area, and the officer observed a bulge in the individual's front pants pocket. *Id.* In this case, however, the initial stop was not justified, occurring at 9:30 in the morning, near a public bus stop, with no indication that any of the three individuals were armed.

The government also argues that the frisk was justified because the officer was alone and the call was vague, leaving open the possibility of dangerous situations. Being outnumbered does not justify a frisk where the initial *Terry* stop is not justified. *See Sibron,* 392 U.S. at 64 ("The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries."). Additionally, the vagueness of the call defeats, rather than supports, a reasonable suspicion that Hughes was armed and dangerous. *See Terry,* 392 U.S. at 21 (police officers must be able to point to specific and articulable facts).

The district court ruled that the frisk was justified because the officer became aware that Hughes was on supervision and affiliated with a gang. This information can support reasonable suspicion to frisk only if it were received *before* the frisk. As the timing of the computer check is "not clear," it cannot form the basis of reasonable suspicion. *See* ***Carter v. United States,*** 729 F.2d 935, 940 (8th Cir. 1984) (burden is on the government to justify warrantless search). Further, the officer testified that the *first* thing he normally does when he stops individuals is to "have the person place their hands on the vehicle and I pat them down and I frisk them."

### III.

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

_____