FILED
United States Court of Appeals
Tenth Circuit

August 11, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

     No. 08-3212

RONALD EUGENE CHARLES, JR.

     Defendant-Appellant.

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:07-CR-40140-SAC-1)**

---

Cyd K. Gilman, Federal Public Defender, State of Kansas, Topeka, Kansas, and Marilyn M. Trubey, Assistant Federal Public Defender, for Defendant-Appellant.

Marietta Parker, Acting United States Attorney, State of Kansas, Topeka, Kansas, and James A. Brown, Assistant United States Attorney, for Plaintiff-Appellee.

---

Before **HENRY**, Chief Judge, **HOLLOWAY** and **GORSUCH**, Circuit Judges.

---

**HENRY**, Chief Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Around 1:25 a.m. on August 17, 2007, in an open air three-level apartment complex, Ronald Charles, upon spotting several approaching Topeka Police Department bike unit officers, blurted out an expletive, hurried up some stairs, and collided with another officer, leading to a scuffle. The officers handcuffed Mr. Charles and discovered a nine millimeter firearm in his waistband. After being indicted on the single count of possession of a firearm after two felony convictions, Mr. Charles sought to suppress the discovery of the gun, contending the officers unlawfully detained and searched him. The district court denied his motion and, finding his prior convictions to include a crime of violence and a controlled substance offense, sentenced Mr. Charles to 57 months of imprisonment. Mr. Charles now challenges the denial of his motion and the district court's determination that one of his previous crimes, which involved walking away from a halfway house, was a crime of violence.

Finding no clear error in the district court's credibility determinations, we conclude Mr. Charles cannot show the district court erred when it denied his motion to suppress. But, because the district court did not have the benefit of the Supreme Court's decision in *Chambers v. United States*, 129 S. Ct. 687, 691 (2009), we agree with Mr. Charles and the government that Mr. Charles is entitled to resentencing, as *Chambers* casts doubt as to whether Mr. Charles's conviction

under 28 U.S.C. § 751(a) was a crime of violence.  We thus vacate his sentence and remand.

## I. BACKGROUND

Topeka police officers had long suspected the three-story Oak Tree Square courtyard apartment complex located at 1301 S.W. Harrison to be an "open-air drug market."  Rec. vol. I, doc. 15, at 1.  Having unsuccessfully attempted to speak with courtyard residents and visitors several times (because the residents would alight the stairs upon spotting approaching police), Officers Patrick Hannan and Guy Gardner hatched a plan to intercept persons in the courtyard: Sergeant Gardner and a second officer would station themselves on the second floor, while Officer Hannan would approach from the parking lot, accompanied by several other officers.

According to the officers, when Officer Hannan's bike patrol approached Mr. Charles at around 1:25 a.m., he uttered the excremental expletive, and ran up the stairs.  Officer Hannan commanded Mr. Charles to stop, which he did not heed.  Atop the stairs, Mr. Charles ran right into Sergeant Gardner and another officer, who were coming around the corner.  Mr. Charles pushed the sergeant and dragged him down some stairs, before three officers eventually subdued him. Upon handcuffing Mr. Charles, Sergeant Gardner discovered a Bryco Arms nine millimeter firearm in his waistband.

Mr. Charles recalls things differently. He maintains he was sitting on the stairs of the complex with three other persons, when the six officers entered the area. Mr. Charles presented testimony from Oak Tree Square tenant, Sharita Huggins, who testified that she was talking to Mr. Charles when he noticed a firearm laying in a mailbox. Out of an abundance of caution, Mr. Charles secured the firearm in his waistband and went upstairs to dispose of it. At the top of the stairs, Mr. Charles saw Sergeant Gardner, who grabbed, "tackled," and searched him, finding the firearm. Rec. vol. I, doc. 2, at 3. Perhaps realizing the potential problems that might result from this encounter, it was Ms. Huggins who then uttered the expletive, as she also, for the first time, saw the cycling officers advance.

Mr. Charles sought to suppress the firearm, arguing that he was unreasonably seized and detained. But, the district court found the officers' testimony to be credible, and determined that they had reasonable suspicion (based upon Mr. Charles's behavior and unprovoked flight up the stairs) to conduct a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Because the court found that Mr. Charles went on to commit an offense (battery) before the officers could stop him, the district court also found that the reasonable suspicion ripened into probable cause, and that the officers therefore could detain, arrest, and search him.

Mr. Charles entered a conditional plea of guilty, and the probation officer prepared a Presentence Investigation Report ("PSR"). The PSR recommended a base offense level of 24, concluding that Mr. Charles had committed the instant offense after having committed two felonies – (1) a crime of violence (escape from lawful custody) and (2) a controlled substance offense (possession with intent to distribute 7.51 grams of crack cocaine). *See* USSG § 2K2.1(a)(2). After application of a three-level reduction for acceptance of responsibility under USSG § 3E1.1, the PSR determined that the total offense level was 21, which, combined with his criminal history level of IV, yielded an advisory guideline range of 57-71 months.

Mr. Charles objected to the PSR's determination that his escape conviction was a crime of violence and objected again at the sentencing hearing. Without this adjustment, Mr. Charles argued his base offense level should be 20, and his total offense level 17. The district court denied the objection, and found that the escape conviction qualified as a crime of violence under § 2K2.1(a)(2) because it involved conduct that presented a serious potential risk of physical injury to another and involved purposeful, violent, and aggressive conduct. The district court sentenced Mr. Charles to 57 months of imprisonment.

## II. DISCUSSION

**A.** **The officers had at least reasonable suspicion, if not probable cause, to detain and search Mr. Charles.**

Before the district court, as here, Mr. Charles maintains that the officers lacked probable cause to seize or detain him. Mr. Charles also suggests the officers lacked probable cause to enter private property. Recognizing that the Supreme Court has held that flight in the face of a uniformed officer may create reasonable suspicion of wrongdoing, *see Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (holding that unprovoked flight is "not necessarily indicative of wrongdoing, but it is certainly suggestive of such"), Mr. Charles denies having fled the scene. "The fact that he simply went into the courtyard of an apartment complex cannot justify stopping and searching him." Rec. vol. I, doc. 2, at 2. Reviewing the findings of fact made by the district court for clear error and the ultimate question of reasonableness de novo, *United States v. Manjarrez*, 348 F.3d 881, 884 (10th Cir. 2003), and viewing the evidence in the light most favorable to the government, *United States v. Yarbrough*, 527 F.3d 1092, 1097 (10th Cir. 2008), we must reject Mr. Charles's arguments.

Unlike Mr. Charles's primary case, *United States v. Hughes*, 517 F.3d 1013 (8th Cir. 2008), the officers here had reasonable suspicion, if not probable cause to detain Mr. Charles. In *Hughe*s, the Eighth Circuit reversed a finding of reasonable suspicion where officers responded to a call of "suspicious parties on the property" and deemed Mr. Hughes to match the described African-American

male. *Id.* at 1015. The court noted that "[b]eing stopped and frisked on the street is a substantial invasion of an individual's interest to be free from arbitrary interference by police." *Id.* at 1018. As the officer testified, Mr. Hughes and his companions were not acting suspiciously, and there was no report of any property crime, personal crime, or any weapons. The officer agreed that there was "nothing in Dispatch . . . to imply that this may be a dangerous situation." *Id.*

Here, as in *Hughes,* there was no disturbance call or suspicious activity reported. The similarities end there, however. Before being ordered to stop, Mr. Charles raced up a flight of stairs. He then ran into an officer, and attempted to break the officer's hold, pulling him down several steps at the same time. It is also a relevant consideration, though not necessarily dispositive, that the officers, upon arrival, encountered Mr. Charles along with several others at the apartment building, late at night, and in a high-crime area. *See Adams v. Williams*, 407 U.S. 143, 147-48 (1972) (holding that the fact that an investigatory stop took place in a "high crime area" is pertinent to a *Terry* analysis).

Although Mr. Charles's response to his inopportune collision with Sergeant Gardner enhanced the officers' growing probable cause, Mr. Charles's subsequent attempt to flee, which involved dragging the officer, provided more than sufficient probable cause for the detention and search. In denying the motion to suppress, the district court found the officers' version of events credible.

Mr. Charles was simply not "[a]n individual approached by an officer who has no reasonable suspicion of wrongdoing [who] may ignore the officer and go about his business" without triggering reasonable suspicion. *United States v. Muhammad*, 463 F.3d 115, 123 (2d Cir. 2006). We therefore agree with the district court's conclusion that the officers had reasonable suspicion, which ripened into probable cause to detain and search Mr. Charles.

Perhaps realizing that the district court did not clearly err when it found the officers' version credible, Mr. Charles now raises an additional wrinkle – that the officers were trespassing on private property when they observed him. The government contends that the argument is waived, or at least forfeited. If the argument is waived, we will not review it; if forfeited, we review for plain error. However, either way, Mr. Charles loses.[1]

---

[1] Waiver is the "intentional relinquishment or abandonment of a known right," while "forfeiture is the failure to make the timely assertion of a right." *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) (internal quotation marks omitted). The dispositive element that differentiates waiver from forfeiture is intent; forfeiture only requires neglect. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) (discussing "the distinction" between intent and neglect, as evidenced by the waiver and forfeiture concepts, and noting that "[w]e typically find waiver in cases where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and abandoned below"), *cert. denied*, 129 S. Ct. 2034 (2009).

Here, there is no indication from the record that Mr. Charles intentionally relinquished or abandoned his private property argument before the district court. However, we need not decide this issue as Mr. Charles's argument is foreclosed under any standard.

To establish plain error, Mr. Charles must establish (1) that the district court committed error, (2) that the error was plain, and (3) that the error affected his substantial rights. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005). If he demonstrates that all three conditions are met, he must then show that an exercise of the court's discretion is appropriate because the error affects the integrity, fairness, or public reputation of judicial proceedings. *Id.* at 1174. If Mr. Charles demonstrates that the alleged error is constitutional error, "we relax our analysis on the remaining elements of plain error review." *Id.* at 1174.

The government argues correctly our plain error review is not possible because Mr. Charles has failed to develop the record sufficiently for such review. For instance, Mr. Charles does not present evidence that he even resided at the apartment complex. He does not suggest he exercised "lawful possession, ownership, or control" over any part of the complex, that he had any reasonable expectation of privacy in the complex or its apartments, or that he had any "right to exclude others" from it. *United States v. Marchant*, 55 F.3d 509, 516-17 (10th Cir. 1995). Thus, he cannot complain that the officers may have trespassed by entering it, and he can point to no error. We thus reject Mr. Charles's allegations that the officers unlawfully trespassed on private property.

**B.      The district court must resentence Mr. Charles in the wake of *Chambers*.**

-9-

Whether a prior conviction qualifies as a "crime of violence" for the purposes of USSG § 4B1.1(a) is a question of statutory construction that we review de novo. *United States v. Paxton*, 422 F.3d 1203, 1205 (10th Cir. 2005). When interpreting the Guidelines, "we look at the language in the guideline itself, as well as at the 'interpretative and explanatory commentary to the guideline' provided by the Sentencing Commission." *United States v. Torres-Ruiz*, 387 F.3d 1179, 1181 (10th Cir. 2004) (citation omitted). Commentary to the Guidelines "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* (citation omitted).

The PSR calculated Mr. Charles's offense level to be 24, because he had two qualifying federal convictions: (1) a crime of violence (escape from lawful custody), and (2) a controlled substance offense (possession with intent to distribute 7.51 grams of crack cocaine). *See* USSG § 2K2.1(a)(2). After applying a three-level reduction for acceptance of responsibility under § 3E1.1, the recommended total offense level was 21. With a criminal history category of IV, the advisory Guideline sentencing range was 57-71 months.

Mr. Charles objected to the PSR's inclusion of the crime of escape as a crime of violence, and restated his objection at the sentencing hearing. The district court filed a lengthy order rejecting Mr. Charles's contentions and sentenced him to 57 months of imprisonment. Under his theory, if the court

determined his conviction to be a non-violent crime, he would have a total offense level of 17, which yields an advisory guideline range of 37-46 months. The government now joins Mr. Charles in asking the court not to treat his "walkaway" escape as a crime of violence. Although we appreciate its candor and willingness to simplify our task, the government's "concession is not dispositive because a party's position in a case (even when that party is the United States) does not dictate the meaning of a federal law." *United States v. Ford*, 560 F.3d 420, 426 (6th Cir. 2009) (citing *Hohn v. United States*, 524 U.S. 236, 248 (1998)).

USSG § 4B1.1(a) provides the parameters for a defendant's career offender status, indicating he is a career offender if (1) the defendant was at least eighteen years of age at the time the felony was committed, (2) the felony "is either a crime of violence or controlled substance offense," and (3) the defendant has two prior felony convictions for a crime of violence or controlled substance offense. An offense is a crime of violence if it, among other things, "involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a). The commentary refines the definition, noting:

> Other offenses are included as "crimes of violence" if (A) that offense has *as an element* the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

*Id.*, cmt. n.1 (emphasis added).

-11-

In determining whether a conviction qualifies as a crime of violence under § 4B1.2, the Supreme Court has instructed courts to engage in "'a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" *United States v. Dennis*, 551 F.3d 986, 988 (10th Cir. 2008) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). Under this approach, we "consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 128 S. Ct. 1581, 1584 (2008); *Nijhawan v. Holder*, 129 S. Ct. 2294, 2299 (2009) (noting the Court looks to the word "'felony' to refer to a generic crime as *generally* committed") (emphasis supplied). If the statute is "ambiguous, or broad enough to encompass both violent and nonviolent crimes," *Dennis*, 551 F.3d at 988, we employ the so-called "modified categorical approach" which allows analysis of "certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the sentencing court." *Id.* (alterations, citations, and quotations omitted); *Nijhawan,* 129 S. Ct. at 2299. Such review does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine "which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007) (internal quotation and citation omitted).

In this case, Mr. Charles was convicted under 18 U.S.C. § 751(a), which prohibits the generic crime of "escap[ing] or attempt[ing] to escape from the custody of the Attorney General," and includes failing to return to custody. 18 U.S.C. § 751(a). The district court apparently considered the plea agreement, which specified that Mr. Charles had escaped the custody of a halfway house, but the court was without the benefit of the Supreme Court's decision in *Chambers*. Before *Chambers*, the categorization of an escape conviction was well-settled in this Circuit, because we held that all escape convictions were "crimes of violence" under § 4B1.2. *See United States v. Gosling*, 39 F.3d 1141, 1142 (10th Cir. 1994) ("Every escape scenario is a powder keg.") (holding walkaway escape under North Dakota statute a crime of violence); *see also United States v. Springfield*, 196 F.3d 1180, 1185 (10th Cir. 1999) (where defendant escaped from a prison honor camp, holding "categorically that an escape *always* constitutes conduct that presents a serous potential risk of physical injury to another") (emphasis supplied); *United States v. Mitchell*, 113 F.3d 1528, 1533 (10th Cir. 1997) (Oklahoma walkaway from community treatment center was crime of violence under § 4B1.2, applying *Gosling*). Thus, pre-*Chambers* we would likely have determined, as the district court did, that Mr. Charles's walkaway from a halfway house under § 751(a) constituted "purposeful and aggressive" conduct that is "roughly similar to the risk of confrontation in burglary." Rec. doc. 43, at 21; *see Gosling*, 39 F.3d at 1142 ("[E]ven in a case where a defendant escapes

-13-

from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.").

In *Chambers*, however, the Supreme Court considered a conviction based on a seven-pronged Illinois statute that, in the Court's view, contained at least two separate categories of crimes, and possibly a third: escape from custody, failure to report to a penal institution, and failing to adhere to home-confinement conditions. 129 S. Ct. at 691 (noting that Illinois statue criminalized (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failure to report to a penal institution, (4) failure to report for periodic imprisonment, (5) failure to return from furlough, (6) failure to return from work and day release, and (7) failure to adhere to the conditions of home confinement). Mr. Chambers had been convicted of failure to report. *Id.* at 690. The Supreme Court concluded that failure to report is not a violent felony for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), because "it does not involve conduct that presents a serious potential risk of physical injury to another." *Id.* at 691 (quotations omitted).[2]

_____

[2] Although Mr. Charles was not sentenced under the ACCA, the applicable Guidelines definition of a "crime of violence," *see* USSG § 4B1.2(a), is almost identical to the ACCA's definition of a "violent felony," *see* 18 U.S.C. § 924(e)(2)(B). Accordingly, we have said that in this context the Supreme Court's analysis under the ACCA "applies equally to the sentencing guidelines." *United*

(continued...)

-14-

The Court continued that crimes involving "failure to report (or to return)" to detention represent "a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id*. at 691-92 (internal marks and citation omitted). Here, we must reexamine *Chambers*'s impact upon our holding that all escape convictions are crimes of violence for purposes of the career offender provisions. *See United States v. Mitchell*, 518 F.3d 740, 752 n.14 (10th Cir. 2008) ("We are bound by the precedent of prior panels absent en banc reconsideration *or a superseding contrary decision by the Supreme Court.") (emphasis supplied); *cf. United States v. Ford*, 560 F.3d 420, 422-23 (6th Cir. 2009) ("[*Chambers*] requires us to modify our prior decisions suggesting that all manner of escape . . . including failures to report, constitute crimes of violence. *Chambers* . . . undermines the notion that a 'walkaway' conviction is a crime of violence.").

While *Chambers* did not speak directly to "walkaway" escapes, as the Sixth Circuit recognized in *Ford*, *Chambers* undermines our prior case law. In *Chambers*, the Court did not discuss whether escape from custody crimes are sometimes or always violent felonies under the ACCA, except to note that "failure to report would seem less likely to involve a risk of physical harm than

<hr>

²(...continued)
*States v. Tiger*, 538 F.3d 1297, 1298 (10th Cir. 2008).

-15-

the less passive, more aggressive behavior underlying an escape from custody."

*Id.* at 691; *but see United States v. Delgado*, No. 08-40859, 2009 WL 959507 (5th

Cir. Apr. 9. 2009) (holding that walkaway from community treatment center

conviction was a crime of violence consistent with *Chambers*) (unpublished).  As

our Sixth Circuit colleagues noted:

> Much as failures to report to custody represent a distinct form of escape, moreover, so do walkaways.  There is a difference between individuals who overcome physical barriers to freedom and those who walk off the grounds--those in other words who leave a facility without removing a physical restraint, without breaking a lock on a door, without climbing over a prison wall or security fence or without otherwise breaking through any other form of security designed to keep them put.

*Ford*, 560 F.3d at 424 (citing *United States v. Templeton,* 543 F.3d 378, 382-83

(7th Cir. 2008) (remanding for resentencing to consider charging papers for

escape convictions under *Begay*)).

*Chambers* compels "a modification of our circuit precedent" and in turn,

"the separate treatment of walkaway escapes after *Chambers* deserves an

explanation."  *Ford*, 560 F.3d at 426.  This is no simple task and we acknowledge

that the determination of whether Mr. Charles's conviction under § 751(a) was a

career-offender-qualifying conviction requires some inquiry, "[a]nd sometimes

the choice is not obvious."  *Chambers*, 129 S. Ct. at 690.  The application of the

categorical method "is not always easy" because a subsection of a criminal statute

may refer to several different crimes, "[a]nd it can happen that some of these

crimes involve violence while others do not." *Nijhawan*, 129 S. Ct. at 2294, No. 08-497, slip. op. at 5 (June 15, 2009). Indeed, in *Chambers*, Justice Alito wrote separately and recognized the many complications that accompany this task and "emphasize[d] that only Congress can rescue the federal courts from the mire into which ACCA's draftsmanship [here, the analogous career offender guidelines] and *Taylor*'s 'categorical approach' have pushed us." 129 S. Ct. at 694 (Alito, J., concurring).

Because the district court limited its factual findings to pre-*Chambers* precedent, we must reverse and remand Mr. Charles's case for resentencing. The district court should analyze Mr. Charles's prior escape conviction under § 751(a) in light of *Chambers* to determine whether or not this conviction was a career-offender-qualifying escape from custody. *See United States v. Pearson*, 553 F.3d 1183, 1186 (8th Cir. 2009) (concluding post-*Chambers* that 18 U.S.C. "§ 751(a) is overinclusive because it covers conduct that does and does not trigger the career offender enhancement" and therefore remanding for a determination of whether the conviction at issue "was a career-offender-qualifying escape from custody, or a non-qualifying failure to return or report to custody"); *United States v. Harris*, No. 08-1090, 2009 WL 1610151 (10th Cir. June 10, 2009) (remanding where defendant had apparently attempted to escape from community corrections center in violation of a Colorado statute, noting "we need not decide whether *Chambers* dictates that an attempted walk-away escape from a community corrections

-17-

program is or is not a crime of violence because–subsequent to briefing–the parties agreed that this case should be remanded to the district court for resentencing using a modified categorical approach"); *United States v. Young*, No. 08-1161, 2009 WL 886236 (10th Cir. Apr. 3, 2009) (remanding where the record did not establish the nature of defendant's escape from a community corrections center or the escape statute under which defendant was convicted, for resentencing post-*Chambers*).

## III. CONCLUSION

Mr. Charles failure to heed an officer's order to stop, and the subsequent collision and skirmish with other officers provided reasonable suspicion and probable cause to stop, detain, and search him; we therefore AFFIRM the district court's denial of his motion to suppress. Given the altered landscape in the wake of *Chambers*, we must VACATE Mr. Charles's sentence and REMAND for resentencing, so that the district court may reevaluate whether Mr. Charles's previous conviction under 18 U.S.C. § 751(a) was a crime of violence as defined in USSG § 4B1.2(a).