FILED
United States Court of Appeals
Tenth Circuit

October 15, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENCIRCUIT TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SAMUEL RODRIGUEZ,

Defendant - Appellant.

No. 14-6123

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. Nos. 5:14-CV-00407-R and 5:12-CR-00012-R-1)**

Samuel Rodriguez, Pro Se, Defendant-Appellant.

Robert Donald Gifford, II, United States Attorney's Office, Oklahoma City,
Oklahoma, for Plaintiff-Appellee.

Before **KELLY**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

**BACHARACH**, Circuit Judge.

Mr. Samuel Rodriguez pleaded guilty to the distribution of five grams or more of methamphetamine. The district court accepted the plea and sentenced Mr. Rodriguez. In determining the sentence, the court applied an enhancement based on a finding that Mr. Rodriguez was a career offender because he had at least two earlier felony convictions for a crime of violence or a controlled substance. *See* U.S. Sentencing Guidelines Manual § 4B1.1(a). One of these convictions involved simple assault under Texas Penal Code § 22.01. The parties disagree on whether the assault conviction involved a crime of violence.

In an earlier appeal, Mr. Rodriguez's attorney argued that the district court should not have considered the Texas conviction a crime of violence. A panel of this court rejected the argument, affirming the conviction.

Mr. Rodriguez then sought collateral relief, claiming that his attorney had mishandled the issue both at sentencing and in the direct appeal. The district court recharacterized the request as a motion to vacate the sentence under 28 U.S.C. § 2255 and denied relief.

Mr. Rodriguez asks us for a certificate of appealability so that he can appeal the denial of relief under § 2255. With this request, Mr. Rodriguez also asks for leave to amend the § 2255 motion and to proceed in forma pauperis. We deny the request for a certificate of appealability and dismiss the appeal. This dismissal moots Mr. Rodriguez's related requests for leave to amend and leave to proceed in forma pauperis.

2

## I. Simple Assault Under the Texas Statute: Violent or Nonviolent?

Underlying the claim is Mr. Rodriguez's belief that his Texas assault conviction did not involve a crime of violence under the federal sentencing guidelines.

In the prior appeal, we held that a crime would be considered violent if it involved intent, but not recklessness. *United States v. Rodriguez*, 528 F. App'x 921, 924 (10th Cir. 2013) (unpublished). Mr. Rodriguez does not quarrel with this conclusion.

Instead, he argues that the assault did not necessarily constitute a crime of violence because the crime could have been triggered by recklessness. This much of the argument is correct, for the Texas statute provides three different mental states for an assault. One of them is recklessness, and another is intentional conduct. *See* Tex. Penal Code § 22.01(a)(1).[1]

The resulting question is which mental state was required in Mr. Rodriguez's criminal case. If it was intentional conduct, the offense would have qualified as a crime of violence; if the required mental state was recklessness, the offense would not have qualified as a crime of violence. And if the offense involved a crime of violence, enhancement of the sentence would have been

---

[1] The third mental state was "knowingly." *See* Tex. Penal Code § 22.01(a). This mental state does not affect any of the issues in Mr. Rodriguez's request for a certificate of appealability.

3

appropriate; if the offense did not involve a crime of violence, enhancement would have been inappropriate.

## II.     The Prior Judicial Decisions and the Claims

The district court concluded at sentencing that the Texas conviction involved a crime of violence. On direct appeal, we upheld that ruling because Texas court records showed that Mr. Rodriguez had pleaded guilty to intentional conduct, as well as recklessness. *Id.* at 923-27.

In the proposed appeal involving his § 2255 motion, Mr. Rodriguez alleges mistakes by the prior Tenth Circuit panel, the district court, and his attorney handling the sentencing and direct appeal.

## III.    Need for a Certificate of Appealability

A certificate of appealability is necessary for Mr. Rodriguez to appeal. 28 U.S.C. § 2253(c)(1)(B). We will issue a certificate only when the applicant makes "a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). This showing requires a demonstration that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983), *superseded by statute*, Antiterrorism and Effective Death Penalty Act of 1996, No. 104-132, 110 Stat.

4

1214, *as recognized in Slack*, 529 U.S. at 483-84).  Under this test, Mr. Rodriguez

must show "that the district court's resolution of the claim was either 'debatable or

wrong.'"  *Laurson v. Leyba*, 507 F.3d 1230, 1231 (10th Cir. 2007) (quoting *Slack*,

529 U.S. at 484).  We conclude that no reasonable jurist could regard the merits of

the § 2255 motion as debatable or wrong.

**IV.    Alleged Mistakes in Our Decision in the Direct Appeal**

Mr. Rodriguez argues in part that we should reverse the denial of § 2255

relief because we mistakenly decided the direct appeal.  This argument has two

shortcomings:  The claim was not part of the § 2255 motion,[2] and our decision in

the direct appeal is law of the case.[3]  For both reasons, any reasonable jurist would

recognize that we could not reverse the district court's denial of relief under

§ 2255 even if we disagreed with the panel's decision in the direct appeal.

**V.    Alleged Mistake by the District Court in Denying § 2255 Relief**

In denying § 2255 relief, the federal district court said that Mr. Rodriguez

could not relitigate classification of simple assault as a crime of violence because

---

[2]    *See Payton v. United States*, 436 F.2d 575, 577 (10th Cir. 1970) (declining to consider an appellate claim that had not been presented in the claimant's § 2255 motion).

[3]    *See Abernathy v. Wandes*, 713 F.3d 538, 549 (10th Cir. 2013) ("[U]nder law-of-the-case doctrine, courts ordinarily would refuse to reconsider arguments presented in a § 2255 motion that were raised and adjudicated on direct appeal."); *see also United States v. Irving*, 665 F.3d 1184, 1192-93 (10th Cir. 2011) (declining to reconsider an argument raised in a § 2255 motion that was decided on direct appeal).

we had already decided the issue in the direct appeal.  R. at 124.  For this statement, the district court cited *United States v. Fennell*, 207 F. App'x 916, 919 (10th Cir. 2006).  *Id.*  Mr. Rodriguez argues that reliance on *Fennell* was misguided because he had not previously alleged ineffective assistance of counsel.

We believe Mr. Rodriguez misunderstood the district court's citation of *Fennell*.  The district court did not question whether Mr. Rodriguez can allege ineffective assistance of counsel under § 2255.  The court was simply expressing its belief that Mr. Rodriguez was trying to relitigate an issue already decided.  He was.  As noted above, Mr. Rodriguez is seeking a certificate of appealability in part so that he can argue that the panel had incorrectly decided his direct appeal.  In these circumstances, no reasonable jurist could credit Mr. Rodriguez's argument for reversal based on the district court's citation of *Fennell*.

## VI.     Alleged Mistakes by Mr. Rodriguez's Prior Attorney: Ineffective Assistance of Counsel

Mr. Rodriguez also seeks to appeal on the ground that his prior attorney provided ineffective assistance by failing to argue that his prior conviction involved an "indivisible" offense, by failing to obtain relevant documents from his prior state case, and by failing to seek certiorari in the United States Supreme Court.  No reasonable jurist could credit any of these claims.

## A. Standard for Ineffective Assistance of Counsel

To prevail on his ineffective-assistance claims, Mr. Rodriguez would ultimately need to show that

- his counsel's representation "fell below an objective standard of reasonableness" and

- "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

## B. The Attorney's Characterization of Mr. Rodriguez's Prior Crime as a "Divisible" Offense

Mr. Rodriguez argues in part that his prior attorney had taken the wrong approach in challenging the courts' classification of his prior offense (simple assault) as a "crime of violence." She argued that the crime was "divisible," and Mr. Rodriguez alleges that the attorney should have argued that the crime was "indivisible." Mr. Rodriguez's allegation is misguided, and no reasonable jurist could regard the attorney's approach as deficient or prejudicial.

### 1. The Texas Assault Statute: Divisible or Indivisible?

There are two ways to determine whether an offense involves a crime of violence: a "categorical approach" and a "modified categorical approach." *See United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010). The categorical approach involves examination of the statutory definition of the offense, rather

7

than the particular facts of the case. *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009). The "modified categorical approach" is used when the statute is ambiguous or broad enough to cover crimes that are both violent and nonviolent. *Id.* In these circumstances, the court can use records from the prior case to determine which part of the statute was charged. *Id.*

Selection of the approach turns on whether the prior offense is considered "divisible" or "indivisible." *See Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2281 (2013) (explaining that the modified categorical approach applies to divisible statutes). A crime is considered "divisible" when it sets out the elements in the alternative. *Id.* at 2281. A crime is "indivisible" when it provides only a single set of elements. *Id.*

When Mr. Rodriguez was sentenced, we had already held that the sentencing court could consult judicial records to determine whether a prior conviction under the same Texas statute (Texas Penal Code § 22.01) had involved intentional conduct or recklessness. *United States v. Zuniga-Soto*, 527 F.3d 1110, 1121-22 (10th Cir. 2008);[4] *see also United States v. Ramirez*, 606 F.3d 396, 397-

_____

[4]    In *Zuniga-Soto*, we stated that § 22.01(a)(1)'s "*mens rea* component is grammatically divisible" and that the court could consider the state judicial records to identify the part of the statute that had been charged. *Zuniga-Soto*, 527 F.3d at 1122. The state judicial records showed that the charge included reckless conduct. *Id.* Thus, we held that the actual charge under § 22.01(a)(1) did not qualify as a crime of violence under Sentencing Guideline 2L1.2. *Id.* at 1123-24.

98 (7th Cir. 2010) (holding that Texas Penal Code § 22.01(a)(1) is "divisible" because it covers three possible mental states).

When the pre-sentence report classified Mr. Rodriguez as a career offender, his attorney objected. In the objection, the attorney treated the crime as "divisible," but argued that the offense should be considered nonviolent because the plea petition had not identified the elements and the plea reflected only a blanket acknowledgment of guilt. R. at 154. The district court rejected that argument, and a Tenth Circuit panel upheld the sentence because the indictment required intentional conduct in addition to recklessness. *United States v. Rodriguez*, 528 F. App'x 921, 923-27 (10th Cir. 2013) (unpublished).

### 2. Deficiency

Mr. Rodriguez alleges that his attorney should have argued at sentencing and in the appeal that

- the offense was "indivisible" (rather than "divisible") and, as a result,

- the court could not refer to judicial documents from the prior proceeding to determine whether the prior offense had involved violence.

In Mr. Rodriguez's view, these arguments would have prevailed under *Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276 (2013), and *Marrero v. United States*, ___ U.S. ___, 133 S. Ct. 2732 (2013) (mem.).

9

Mr. Rodriguez's allegation would not sway any reasonable jurist because *Descamps* and *Marrero* did not affect our circuit's method of distinguishing between divisible and indivisible offenses. In *Descamps*, the Supreme Court simply held that judicial documents could not be consulted when the crime involves an indivisible statute. *Descamps*, 133 S. Ct. at 2283; *see United States v. Trent*, 12-6283, slip op. at 17 (10th Cir. Sept. 25, 2014) (pending publication) (stating that in *Descamps*, the Supreme Court did not "suggest in any way that it was retreating from its application of [the modified categorical approach] in previous cases"). And in *Marrero*, the Court simply remanded for reconsideration in light of *Descamps*. *Marrero*, 133 S. Ct. at 2732. After *Descamps* and *Marrero*, the ultimate question remains: Was the Texas Penal Statute § 22.01 divisible or indivisible? We held in the direct appeal that the offense was divisible. *United States v. Rodriguez*, 528 F. App'x 921, 925 (10th Cir. 2013) (unpublished).

Mr. Rodriguez argues that his attorney should have taken a different approach in light of *Descamps* and *Marrero*. Even in hindsight, no reasonable jurist could regard defense counsel's approach as deficient because the Supreme Court's opinions in *Descamps* and *Marrero* did not address whether the prior crime was divisible or indivisible.

As noted above, the Supreme Court did not face the divisibility of a statute in *Descamps*. The issue did arise in the Third Circuit's decisions in *Marrero*. There, the issue was whether a Pennsylvania conviction for simple assault

10

involved a "crime of violence" for purposes of the sentencing enhancement. *United States v. Marrero*, 677 F.3d 155, 160 (3d Cir. 2012). Like Texas, Pennsylvania provided three alternative mental states that could result in guilt: "intentionally," "knowingly," or "recklessly." *Id*. (quoting 18 Pa. Cons. Stat. Ann. § 2701(a)). The Third Circuit Court of Appeals held that the statute was "divisible" and that, as a result, the sentencing court could consult judicial records from the state case to identify the statutory language involved in the charge. *Id*. at 161-62.

Six days before we issued a decision in Mr. Rodriguez's appeal, the Supreme Court issued a memorandum decision, vacating the Third Circuit's judgment and remanding for further consideration in light of *Descamps*. *Marrero,* 133 S. Ct. at 2732.

On remand, the Third Circuit Court of Appeals again held that the crime was divisible, which allowed consultation of state judicial records to determine whether the charge involved conduct that was "intentional," "knowing," or "reckless." *United States v. Marrero*, 743 F.3d 389, 395-97 (3d Cir. 2014).[5]

---

[5] Following *Descamps*, the First Circuit Court of Appeals also applied the modified categorical approach (permitting consultation of state judicial documents to identify the pertinent charge) when a state statute allowed either "intentional" or "reckless" conduct to suffice for the mens rea. *See United States v. Carter*, 752 F.3d 8, 17 (1st Cir. 2014) (assault based on intentional, knowing, or reckless conduct).

11

With the benefit of *Descamps* and *Marrero*, no reasonable jurist could question the reasonableness of Mr. Rodriguez's legal representation. The attorney never conceded the applicability of the sentencing enhancement. In fact, she challenged its applicability by arguing that the Texas crime did not involve violence.

She did acknowledge that the sentencing judge could consult the state judicial records to identify the parts of the statute involved in the charge. But she had little choice, for we had already held in *Zuniga-Soto* that a sentencing judge could consult state judicial records when deciding whether the charge involved "intentional" or "reckless" conduct in a prosecution under Texas Penal Code § 22.01(a).

Faced with the precedent in *Zuniga-Soto*, Mr. Rodriguez's attorney argued that the state judicial documents did not clarify the nature of the underlying charge because the guilty plea constituted a simple blanket acknowledgment of guilt. R. at 81 (in district court), 154 (on direct appeal). We ultimately rejected this argument, but it was a reasonable strategy. In fact, two months after our decision in Mr. Rodriguez's direct appeal, a virtually identical argument prevailed in *United States v. Espinoza*, 733 F.3d 568 (5th Cir. 2013). There the Fifth Circuit Court of Appeals declined to apply the enhancement when the defendant pleaded guilty to an indictment containing multiple mens rea standards, reasoning that the

12

defendant's "blanket statement" in the plea did not constitute an admission to

"every listed category of mental culpability." *Espinoza*, 733 F.3d at 572.[6]

---

[6]     The arguments by Mr. Rodriguez's attorney closely resembled the arguments by defense counsel in *Espinoza*.

For example, Mr. Rodriguez's attorney argued to the judge that the plea papers were boilerplate and did not contain a "case-specific, detailed statement or confession." R. at 154. Similarly, the attorney argued in the direct appeal:

Nowhere does the "Judicial Confession" or "Notice" contain a case-specific, detailed statement or confession. Nowhere in the record do we find a recorded or transcribed declaration of a factual basis or plea colloquy. Thus, there is nothing from which the Court can discern specifically what elements were in fact admitted by Mr. Rodriguez or found by the state court. In response to Mr. Rodriguez's objection, at the sentencing hearing the government (which bore the burden of proof) presented nothing to show what was contained in the state plea colloquy or meaningful factual basis. Thus, it is not known if Mr. Rodriguez admitted to all four of the separate acts charged in Count II, or fewer. More importantly for the purposes of crime of violence designation, it is not known which of the three possible *mens reas* he admitted to having.

*Id.* at 81-82.

In *Espinoza*, defense counsel made a similar argument:

The state indictment alleged three mental states in the conjunctive: intentionally, knowingly, and recklessly. When the charging papers for a prior conviction are in the conjunctive, this Court looks to the "least culpable means" of committing the offense to determine whether the particular offense subjects a defendant to enhanced federal punishment. The least culpable mental state for committing the Texas felony assault offense is recklessness. [The defendant] admitted only what was necessary to plead guilty. No mental state was specified in his admission. The determination whether [the defendant's] offense is a violent felony for [purposes of the Armed Career Criminal Act] must therefore be made using the least culpable mental state charged—recklessness.

Mr. Rodriguez criticizes his attorney not only for the way that she addressed the issue at sentencing and in her brief on direct appeal, but also for failing to cite the Supreme Court's decisions in *Descamps* or *Marrero*. But she could not have cited the cases in her briefs because they did not exist yet.[7]

She did have an opportunity to address the decisions by submitting a letter under Federal Rule of Appellate Procedure 28(j), alerting the Tenth Circuit panel to new authorities. But, that was unnecessary because the government had already submitted two 28(j) letters, alerting the panel to both *Descamps* and *Marrero*.

Mr. Rodriguez argues that his attorney could have responded to the government's 28(j) letters. Why would she have done that?

In the first letter, the government stated only that

- the *Descamps* Court had allowed consideration of judicial documents only if the statute was divisible, and

- the government regarded the Texas assault statute as divisible.

Letter from Robert Don Gifford to Elizabeth Shumaker, *United States v. Rodriguez*, No. 12-6285 (10th Cir. June 26, 2013). Mr. Rodriguez's attorney had little reason to question either statement: Her theory was consistent with what the

---

Def.'s Reply Br. at 5-6, *United States v. Espinoza*, 2012 WL 1878696 (5th Cir. May 14, 2012) (citations omitted).

[7] The deadline for a reply brief in the direct appeal was June 3, 2013, which was 17 days before the Supreme Court's decision in *Descamps* and 24 days before the Court's memorandum decision in *Marrero*.

14

government had said, for she was arguing that the Texas statute involved a nonviolent crime because the plea statement had not identified the relevant statutory language.

Mr. Rodriguez also faults his attorney for failing to alert the Tenth Circuit panel to the Supreme Court's memorandum decision in *Marrero*. We again wonder why the attorney would have done that. Six days after *Marrero* was issued, the government filed a second 28(j) letter, advising the Tenth Circuit panel of the Supreme Court's memorandum decision. Letter from Robert Don Gifford to Elizabeth Shumaker, *United States v. Rodriguez*, No. 12-6285 (10th Cir. July 3, 2013). The letter said little about the decision, for there was not much to say. *Id.* The Supreme Court's "discussion" of the sentencing issue consisted of one sentence, stating without explanation that the Court was vacating the judgment and remanding for reconsideration of the week-old decision in *Descamps*. *Marrero v. United States*, ___ U.S. ___, 133 S. Ct. 2732 (2013) (mem.).

Even if Mr. Rodriguez's attorney could have crafted an argument to respond to the government's letter, she would not have had time to do so because the panel decided the appeal within three hours of the government's Rule 28(j) letter.

In these circumstances, no reasonable jurist could regard the legal representation as deficient for failure to argue that the Texas assault statute was indivisible or to tell the sentencing judge or the appeal panel about *Descamps* or *Marrero*.

15

### 3. Prejudice

But, for the sake of argument, we may assume that the attorney should have done all of that. Even then, Mr. Rodriguez would have had to prove a probability of a different result if his attorney had taken a different position based on *Descamps* or *Marrero*. Mr. Rodriguez could not convince any reasonable jurist that he probably would have had a better outcome.

To determine whether the attorney's strategy was prejudicial, we project what would have happened if the attorney had argued to the sentencing judge that he could not review the state judicial records to identify the relevant statutory language. The sentencing judge would have been obliged to reject that position in light of *Zuniga-Soto*.

What would have happened on appeal if the attorney had raised *Descamps* and *Marrero*? The same thing that did happen, for the Tenth Circuit panel was alerted to both opinions and still upheld the sentence.

### 4. Summary

In these circumstances, we conclude that no reasonable jurist could credit the ineffective-assistance claim based on the attorney's strategy. In the district court and on appeal, Mr. Rodriguez's attorney opposed classification of the Texas assault conviction in a manner consistent with our precedents. The attorney's approach was neither deficient nor prejudicial.

16

## C. The Attorney's Alleged Failure to Obtain Judicial Documents Regarding the Texas Conviction

In the direct appeal, Mr. Rodriguez's attorney referred to judicial documents underlying the Texas conviction for simple assault. Doing so, the attorney noted that the state judicial documents had been omitted in the district court record. Mr. Rodriguez infers from this remark that the attorney had neglected to get the documents. The federal district court rejected this argument, pointing out that the court had sentenced Mr. Rodriguez with the benefit of the state judicial records.

No reasonable jurist would credit the claim that the attorney failed to obtain the Texas documents. Mr. Rodriguez simply misunderstands his attorney's remark. The attorney referred to the Texas documents in the pre-sentence report, stating that she had obtained the state indictment and judgment and referring to the state court's notice. Defense counsel used these documents to argue her position to the sentencing judge and in the direct appeal. Thus, no reasonable jurist could credit the ineffective-assistance claim based on the attorney's supposed failure to obtain the Texas documents.

## D. The Attorney's Alleged Failure to Seek Certiorari in the Supreme Court

Mr. Rodriguez also contends that his attorney should have sought Supreme Court review in the direct appeal. No reasonable jurist would find this contention debatable for two reasons: (1) This contention did not appear in the § 2255

17

motion;[8] and (2) there is no constitutional right to effective assistance of counsel relating to requests for certiorari review in the United States Supreme Court.[9]

## VII. Disposition of the Application for a Certificate of Appealability

Because no reasonable jurist would find the § 2255 motion reasonably debatable, we deny a certificate of appealability. Based on the absence of a certificate, we dismiss the appeal.

## VIII. Motion for Leave to Amend the § 2255 Motion

Mr. Rodriguez not only wants to appeal, but also to amend the § 2255 motion. With dismissal of the appeal, we deny the motion for leave to amend on the ground of mootness.[10]

---

[8] *See Payton v. United States*, 436 F.2d 575, 577 (10th Cir. 1970) (declining to consider an appellate claim that had not been presented in the claimant's § 2255 motion).

[9] *See Austin v. United States*, 513 U.S. 5, 8 (1994) (per curiam) (holding that there is no constitutional right to counsel in forums offering discretionary review); *Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (per curiam) (holding that because a habeas petitioner had no right to counsel in appealing to the state supreme court, an attorney's failure to timely appeal could not have resulted in denial of effective assistance of counsel).

[10] The Court cannot tell which claims Mr. Rodriguez wants to add to his § 2255 motion. It appears that he may be seeking to add the claims regarding his attorney's failure to: (1) address *Descamps* and *Marrero* in a 28(j) letter, and (2) file a petition for certiorari in the United States Supreme Court. Because we are not sure what Mr. Rodriguez wants to add and is pro se, we liberally construe his application for a certificate of appealability to address these issues in connection with his appeal (as well as possible amendments to the § 2255 motion). *See Sigala v. Bravo*, 656 F.3d 1125, 1126 (10th Cir. 2011) (liberally construing an application for a certificate of appealability in light of the claimant's pro se

**IX.    Request for Leave to Proceed In Forma Pauperis**

Mr. Rodriguez requests leave to proceed in forma pauperis.  Because we are dismissing the appeal, we deny the request for leave to proceed in forma pauperis on the ground of mootness.  *See Johnson v. Keith*, 726 F.3d 1134, 1136 (10th Cir. 2013) (denying leave to proceed in forma pauperis on the ground of mootness upon denial of a certificate of appealability).

---

status).