**F I L E D**

PUBLISH

**January 4, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CLYDE DWAYNE SMITH,

Defendant-Appellant.

No. 04-5085

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 00-CR-150-H)**

Barry L. Derryberry, Research and Writing Specialist, Office of the Federal
Public Defender (Paul D. Brunton, Federal Public Defender with him on the brief)
for Defendant-Appellant.

Leena M. Alam, Assistant United States Attorney (David E. O'Meilia, United
States Attorney, and Kevin Danielson, Assistant United States Attorney, with her
on the brief) for Plaintiff-Appellee.

Before **O'BRIEN**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

This appeal presents the interesting question of how to interpret the United States Sentencing Guidelines when the application notes suggest a broader interpretation than the plain language.

**I.**

Defendant Clyde Smith pleaded guilty to possession of a firearm and ammunition after former conviction of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Presentence Investigation Report ("PSR") calculated his base offense level under § 2K2.1(a)(2) of the Federal Sentencing Guidelines, which provides for a base offense level of 24, "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). The PSR relied on two prior felony convictions, one of which was an Oklahoma conviction for receiving or acquiring proceeds derived from illegal drug activity. Mr. Smith objected to the classification of his prior conviction as a controlled substance offense.

The district court overruled Mr. Smith's objection, finding that "certainly it aids and abets a drug transaction, that somebody concealing proceeds or holding proceeds of that transaction knowing that it was derived from that transaction." The district court then found that Mr. Smith's offense level of 21, after a 3-level reduction for acceptance of responsibility, and his criminal history category of V,

produced a guidelines range of 70-87 months of imprisonment. The court

imposed a sentence of 78 months. Mr. Smith timely filed this appeal challenging

his sentence, and we exercise jurisdiction under 28 U.S.C. § 1291.

**II.**

Unlike statutes, regulations, or any other legislative directives of which we

are aware, courts are bound (but for their newly-discovered discretion pursuant to

*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 756-57 (2005)) not only by

the language of the United States Sentencing Guidelines, but also by

"'interpretative and explanatory commentary to the guideline' provided by the

Sentencing Commission." *United States v. Robertson*, 350 F.3d 1109, 1112 (10th

Cir. 2003) (quoting *United States v. Frazier*, 53 F.3d 1105, 1112 (10th Cir.

1995)). "[C]ommentary in the Guidelines Manual that interprets or explains a

guideline is authoritative unless it violates the Constitution or a federal statute, or

is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v.

United States*, 508 U.S. 36, 38 (1993). Resolution of this case revolves around

the relation between Sentencing Guideline § 4B1.2(b) and its explanatory notes.

The Guideline defines "controlled substance offense" as

> an offense under federal or state law, punishable by a term of
> imprisonment of more than one year, that prohibits the manufacture,
> import, export, distribution, or dispensing of a controlled substance
> (or a counterfeit substance) or the possession of a controlled

substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). The application note to section 4B1.2 explains that the definition also encompasses crimes for aiding and abetting, conspiring, and attempting to commit a controlled substance offense. *Id.* cmt. n.1.

The Oklahoma statute under which Mr. Smith was convicted provides:

It is unlawful for any person knowingly or intentionally to receive or acquire proceeds and to conceal such proceeds, or engage in transactions involving proceeds, known to be derived from any violation of the Uniform Controlled Dangerous Substances Act . . . or of any statute of the United States relating to controlled dangerous substances as defined by the Uniform Controlled Dangerous Substances Act.

63 Okla. Stat. Ann. § 2-503.1(A). On its face, the Oklahoma statute does not involve " the manufacture, import, export, distribution, or dispensing of a controlled substance." Nor is the Oklahoma statute one that prohibits aiding and abetting, conspiring, or attempting to commit the crime of manufacturing, importing, exporting, distributing, or dispensing a controlled substance – although some of the acts encompassed within the Oklahoma statute might also be chargeable under an aiding or abetting, conspiracy, or attempt charge.

If we gave Guideline § 4B1.2(b) a strict and narrow interpretation, we would therefore be forced to conclude that violations of 63 Okla. Stat. Ann. § 2-503.1(A) do not fall within it. That was the approach taken by this Court in

*United States v. Wagner*, 994 F.2d 1467, 1474 (10th Cir. 1993). The issue in

*Wagner* was whether possession of a listed precursor chemical constituted a

controlled substance offense under § 4B1.2(b). We concluded that the phrase

"offense under federal or state law" refers "directly to the *charged offense*, not

the charged offense and all relevant conduct." *Id.* We found that possession of a

listed precursor chemical did not constitute a controlled substance offense under

this interpretation because the charged offense was not, "by its plain terms, a

federal or state law that prohibits the manufacture or possession of a controlled

substance." *Id.* at 1475.

The United States Sentencing Commission did not approve of our decision

in *Wagner*. Rather than amend the text of the Guideline or of Commentary note

1,[1] however, the Commission simply added one more example of an included

offense to the application note. Now, the application note states that

---

[1]The Commission might, for example, have amended the Guideline to read
something like:

> any offense under federal or state law, punishable by a term of imprisonment of
> more than one year, that involves the manufacture, import, export, distribution,
> or dispensing of a controlled substance (or a counterfeit substance) or the
> possession of a controlled substance (or a counterfeit substance) with the intent
> to manufacture, import, export, distribute, or dispense.

As an alternative, it might have amended Commentary note 1 to explain that the
definition also encompasses conviction for conduct that could be charged on a theory of
aiding and abetting, conspiring, or attempting to commit a controlled substance offense.

"[u]nlawfully possessing a listed chemical with intent to manufacture a controlled substance . . . is a controlled substance offense." U.S.S.G. § 4B1.2, app. C, amend. 568.

This presents an interpretive difficulty. The language of the Guideline itself still looks as categorical as ever, but it is apparent that the Commission does not read it that way. If it did, then possession of a listed chemical with intent to manufacture a controlled substance would not be included. Moreover, several other examples listed in the explanatory note similarly suggest a broader interpretation of the Guideline. These include possession of a prohibited flask or equipment with intent to manufacture a controlled substance, maintaining any place for the purpose of facilitating a drug offense, and using a communications facility in committing, causing, or facilitating a drug offense. U.S.S.G. § 4B1.2 app. C. By including these examples in the application note, the Sentencing Commission necessarily implies that the phrase "offense under federal or state law" encompasses more than a strict reference to the terms of the statute of conviction. Although a strict reading of the language of the Guideline appears narrower than the application notes may suggest, we cannot say (and the parties do not argue) that the notes so far depart from the language of the Guideline that they are "inconsistent with, or a plainly erroneous reading of [the] guideline." *See Stinson*, 508 U.S. at 38. Indeed, one Court of Appeals has adopted a broad

definition of "controlled substance offense" as including any crime that "facilitates" a controlled substance offense. *United States v. Shabazz*, 233 F.3d 730, 733 (3d Cir. 2000)). We need not go that far; the application notes can be understood as including within the Guideline convictions for conduct that could have been charged as a controlled substance offense, or as aiding and abetting, conspiring, or attempting to commit a controlled substance offense. In any event, our interpretation of the definition of "controlled substance offense" in *Wagner* is no longer consistent with the amended sentencing guidelines.

We must therefore assess Mr. Smith's conviction under 63 Okla. Stat. Ann. § 2-503.1(A) in light of an interpretation of the Guideline informed by the application notes. Where, as here, the statutory language defining the underlying offense is ambiguous or broad enough to criminalize some acts that fall within the Guideline and some that do not, then we must look to the charging documents, the judgment, the plea agreement, plea colloquy, and other findings of fact adopted by the defendant upon entering the plea. *See Shepard v. United States*, 125 S. Ct. 1254, 1259-60 (2005); *Taylor v. United States*, 495 U.S. 575, 602 (1990); *cf. United States v. Zamora*, 222 F.3d 756, 764 (10th Cir. 2000) (applying this approach to determine whether a prior offense qualifies as a crime of violence). As noted above, the Oklahoma statute under which Mr. Smith was convicted provides:

> It is unlawful for any person knowingly or intentionally to receive or acquire proceeds and to conceal such proceeds, or engage in transactions involving proceeds, known to be derived from any violation of the Uniform Controlled Dangerous Substances Act . . . or of any statute of the United States relating to controlled dangerous substances as defined by the Uniform Controlled Dangerous Substances Act.

63 Okla. Stat. Ann. § 2-503.1(A). Some but not all conduct prohibited by the Oklahoma statute falls within the guidelines definition, as fleshed out by the interpretive notes. For example, a person who knowingly receives proceeds from an illegal drug sale might well be engaged in the distribution of a controlled substance. Therefore, we must look to the charging documents, plea agreement, and plea colloquy to determine whether Mr. Smith's prior Oklahoma conviction constituted a controlled substance offense. The information charged Mr. Smith with "unlawfully, feloniously, and willfully, while acting in concert [with another], receiving money derived from one Pat Dunlop during a drug transaction." Appellee Addendum of Ex., Ex. 1, Information. During the plea colloquy, Mr. Smith admitted that he received fifty dollars in drug money from selling cocaine at an apartment complex in Tulsa County. Both the information and the plea colloquy therefore demonstrate that Mr. Smith distributed a controlled substance. Consequently, he committed a controlled substance offense under § 4B1.2(b) of the guidelines. Because Mr. Smith's conviction for receipt of proceeds derived from illegal drug activity was his second controlled substance

offense, the district court properly found that his base offense level was 24. *See* U.S.S.G. § 2K2.1(a)(2).

## III.

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court.