**PUBLISH**

**March 9, 2010**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 08-4033

MICHAEL CHARLES WISE,

Defendant - Appellant.

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:07-cr-00556-DAK-1)**

Jeremy M. Delicino, Salt Lake City, Utah, for Defendant-Appellant.

Karin M. Fojtik, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **BRISCOE, EBEL,** and **GORSUCH,** Circuit Judges.

**EBEL**, Circuit Judge.

Having pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), Michael Charles Wise now appeals his sentence of forty-eight months' imprisonment. He challenges his sentence on two grounds. First, he argues that his 2006 Utah conviction for failure to stop at the command of a police officer was not a "crime of violence" for purposes of United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(4)(A), and thus did not qualify him for a base offense level of twenty. Second, he argues that because the Presentence Investigation Report ("PSR") did not assign him criminal history points for his 2006 conviction, the district court could not use that conviction—under the application notes to § 2K2.1—to raise his base offense level. Exercising jurisdiction under 28 U.S.C. § 1291, we reject both arguments, and AFFIRM Wise's sentence.

## Background

On August 22, 2007, Wise was charged in a one-count indictment with being a previously-convicted felon in possession of a nine millimeter Smith & Wesson handgun, in violation of 18 U.S.C. § 922(g)(1). [1] On November 27, 2007, Wise pleaded guilty to the offense.

---

[1] The statute forbids "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [from] possess[ing] in or affecting commerce, any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(1).

In the PSR, the Probation Office recommended that Wise be sentenced under USSG § 2K2.1(a)(4)(a),[2] which prescribes a base offense level of twenty for defendants convicted of being felons unlawfully in possession of a firearm who have also been previously convicted of a felony crime of violence. According to the PSR, in April of 2006 Wise was convicted in Utah state court for failing to stop in response to a police officer's command to do so, which under Utah Code § 41-6A-210 is a third-degree felony. Wise was sentenced to 180 days' imprisonment for this violation. The PSR did not assign Wise any criminal history points for this conviction; even so, his criminal history score totaled fourteen, one point more than the thirteen points required to qualify him for the highest criminal history category, VI.

At sentencing, Wise objected to the PSR in two respects: (1) that his 2006 conviction did not qualify as a crime of violence under USSG § 2K2.1(a)(4)(A); and (2) that, under application note 10 to § 2K2.1, the court should not have applied an enhancement to Wise's offense level based on a prior conviction for which he did not receive criminal history points.[3] The district court denied Wise's objections, and, after

---

[2] Wise was sentenced under the 2006 version of the United States Sentencing Commission Guidelines Manual; all citations herein are to that version of the guidelines.

[3] As a threshold matter, we note that in his written objection to the PSR, Wise raised only the "crime of violence" issue, and he did not raise the application note 10 issue until the sentencing hearing. The Federal Rules of Criminal Procedure require defendants to state any objections to the PSR in writing within fourteen days after receiving it. Fed. R. Crim. P. 32(f)(1). Rule 32(i)(1)(D), however, establishes that the district court "may, for good cause, allow a party to make a new objection at any time before sentence is

Continued . . .

considering the sentencing factors set out in 18 U.S.C. § 3553(a), sentenced Wise to forty-eight months' imprisonment. Wise appealed to this court, and here presses the same two issues regarding his 2006 Utah conviction that he argued to the district court at sentencing.

## Discussion

**I.     Wise's Conviction Under Utah Law for Failure to Stop at the Command of a Police Officer Was for a "Crime of Violence"**

At sentencing, the district court raised Wise's base offense level to twenty, per USSG § 2K2.1(a)(4)(A), which dictates such an elevation "if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." To determine the meaning of "crime of violence," the application notes to § 2K2.1 direct courts to § 4B1.2(a), which states:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a).

---

Cont.
imposed." Because the district court treated the defendant's application note 10 objection as timely, and because neither party argued to the contrary, we will consider the argument.

4

Wise was convicted in 2006 for violating Utah Code § 41-6a-210, which states:

(1)(a) An operator who receives a visual or audible signal from a peace officer to bring the vehicle to a stop may not:

> (i) operate the vehicle in willful or wanton disregard of the signal so as to interfere with or endanger the operation of any vehicle or person; or

> (ii) attempt to flee or elude a peace officer by vehicle or other means.

Subsection (1)(b) of the statute establishes that a violation of (1)(a) is "a felony of the third degree." Id.[4]

In order for § 2K2.1(a)(4)(A) to apply, Wise's 2006 conviction must have been for a "crime of violence" meeting the terms of § 4B1.2(a). Utah law establishes that, unless a particular statute provides otherwise, third-degree felonies are punishable "for a term not to exceed five years." Utah Code § 76-3-203(3). Wise's failure-to-stop conviction thus meets the first element of the § 4B1.2(a) test, in that it is "punishable by imprisonment for a term exceeding one year." The Utah statute on its face does not have "as an element the use, attempted use, or threatened use of physical force against the person of another," nor is it "burglary of a dwelling, arson, or extortion," and it does not "involve[] use of explosives." USSG § 4B1.2(a)(1), (2). Therefore, in order to be a crime of violence, the Utah statute must fall into § 4B1.2(a)'s residual clause, which encompasses crimes "otherwise involv[ing] conduct that presents a serious potential risk

---

[4] The record does not include any state-court documents that might indicate under which of the two subsections Wise was charged.

5

of physical injury to another." Id. § 4B1.2(a)(2). Whether a crime falls into the residual clause is a question of law that we review de novo. United States v. Charles, 576 F.3d 1060, 1066 (10th Cir. 2009), cert. denied, No. 09-7467, 2009 WL 3780709 (U.S. Dec. 14, 2009).

When determining whether a past conviction qualifies as a "crime of violence," we employ a categorical approach that looks to the words of the statute and judicial decisions interpreting it, rather than to the conduct of any particular defendant convicted of the crime. See Taylor v. United States, 495 U.S. 575, 602 (1990). However, if the statute encompasses both conduct that would qualify as a crime of violence and conduct that would not, we employ a modified categorical approach and look to the statutory elements, the defendant's charging documents, plea agreement and colloquy (if any), and uncontested facts found by the district judge to determine whether the particular defendant's conduct violated the portion of the statute that is a crime of violence. Charles, 576 F.3d 1067; see also Shepard v. United States, 544 U.S. 13, 16 (2005) (enumerating the sources that may be consulted).

To determine whether the offense categorically falls within the residual clause, we conduct a two-step analysis. First, we ask whether the offense "presents a serious potential risk of physical injury to another," as required by the text of § 4B1.2. See Begay v. United States, 128 S. Ct. 1581, 1584 (2008). Second, as the Supreme Court held in Begay, we must determine whether the offense is "roughly similar, in kind as well as in degree of risk posed," to the enumerated crimes in § 4B1.2(a)(2), namely, burglary,

6

arson, extortion, or crimes involving explosives. Id. at 1585. A crime is "roughly similar" to an enumerated crime if it "typically involve[s] purposeful, violent, and aggressive conduct." Id. at 1586 (quotation marks omitted).

In United States v. West, 550 F.3d 952, 960 (10th Cir. 2008), we applied the Begay test to the same Utah criminal statute at issue here, and held unequivocally that "a prior conviction under Utah law for failing to stop at an officer's command qualifies as a violent felony" under the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The residual clause of the ACCA is worded almost identically to that of § 4B1.2(a), and we have held that in interpreting "crime of violence" under § 4B1.2, we may look for guidance to cases construing the ACCA's parallel provision. See Charles, 576 F.3d at 1068 n.2 (citing United States v. Tiger, 538 F.3d 1297, 1298 (10th Cir. 2008)). If West remains the law of the Tenth Circuit, it thus is squarely on point and disposes of Wise's claims in the government's favor.

Wise argues, however, that West is no longer good law, because of the Supreme Court's recent decision in Chambers v. United States, 129 S. Ct. 687 (2009). In Chambers, the Supreme Court held that a conviction under Illinois law for failure to report to weekend confinement was not a "violent felony" for the purposes of the residual clause of the ACCA. Id. at 689. While that case did not address the criminal statute at issue here and in West, Wise argues that Chambers undermined our opinion in West in two ways. First, that it did so by making it clear that we should treat different sections of a single criminal statute as distinct crimes for the purpose of the residual clause. Second,

7

that in by holding that some escapes are not crimes of violence, <u>Chambers</u> undercut

<u>West</u>'s reliance on Tenth Circuit precedent that all escape crimes are crimes of violence,

thus undermining <u>West</u>'s precedential force.[5]

We find neither argument convincing, and thus hold that <u>West</u> remains the law of

this circuit, and controls the outcome in this case.

**A.     Both Subsections of the Utah Statute Define a Crime of Violence**

Before conducting the two-step <u>Begay</u> analysis, a court must first put a criminal

statute in the proper category.  "And sometimes the choice is not obvious."  <u>Chambers</u>,

129 S. Ct. at 690.  In <u>Chambers</u>, the Court was faced with a conviction under an Illinois

statute that contained multiple sections detailing seven different ways of committing the

statutory offense.  <u>Id.</u> at 691.  Rather than consider the statute as setting forth a single

crime, the <u>Chambers</u> Court drew distinctions between the seven types of violation:

> [W]e believe that a failure to report (as described in the statutory
> provision's third, fourth, fifth, and sixth phrases) is a separate crime,
> different from escape (the subject matter of the statute's first and second
> phrases), and from the potentially less serious failure to abide by the terms
> of home confinement (the subject of the final phrase).

---

[5] Wise also advances arguments that this court's conclusion in <u>West</u> was wrong.  We disagree, but we also note that "[a]bsent an intervening Supreme Court or en banc decision justifying such action, we lack the power to overrule our own precedent." <u>United States v. Hernandez-Rodriguez</u>, 352 F.3d 1325, 1333 (10th Cir. 2003) (internal quotation marks omitted).  Therefore, unless <u>Chambers</u> effectively overrules <u>West</u>, we are not free to reconsider the conclusions we reached in our earlier case, even if we were disposed to do so, which we are not.

Id. at 691.  The Court thus construed the statute as creating three distinct "crimes" for the purposes of the ACCA residual clause analysis, and it ultimately concluded that the "failure to report" violations did not constitute crimes of violence.

The Utah statute before us has two subsections, and Wise asserts that we must consider the two subsections separately for the purpose of determining whether each constitutes a crime of violence under § 4B1.2.  This argument fails to clear the gate, however, because in West we determined that both subsections of the Utah failure-to-stop statute are crimes of violence.  See West, 550 F.3d at 969-71.  In West, we walked through both prongs of the statute, and found that each one defines a crime that is violent, aggressive, and purposeful.  Id.  Therefore, even if we were now to categorize the two subsections of the Utah statute as composing separate crimes, we would still be bound by the West panel's conclusion that each subsection is a crime of violence.  We could not second-guess that conclusion even if we were inclined to doubt it, which we are not.  Each of the two subsections of Utah Code § 41-6a-210 sets out a crime of violence, and so in that respect, West remains good law notwithstanding Chambers.

B.      **The Utah Statute Criminalizes Conduct Akin to Violent Escapes, Rather Than the Failure-to-Report Escapes Addressed in Chambers**

Wise argues that Chambers undermined West because Chambers concluded that not all escape crimes are crimes of violence.  In holding that the failure-to-report type of escape crimes are not crimes of violence, Chambers implicitly overruled precedents in many circuits—including this one—that had deemed all escape crimes categorically

crimes of violence. See Charles, 576 F.3d at 1069 ("Chambers compels a modification of our circuit precedent.") (quotation marks omitted). The West panel relied in part upon that now-overruled line of precedent, and Wise argues that West thus has now been undermined by Chambers. We disagree.

The distinction upon which the Supreme Court in Chambers ultimately based its decision is the distinction between crimes of inaction, such as a passive failure to report, and crimes requiring action, such as an escape from custody. West did, to be sure, cite to our circuit precedent that all escape crimes were categorically crimes of violence. See West, 550 F.3d at 963. And Chambers undeniably held that not all escape crimes are crimes of violence. See 129 S. Ct. at 692. But it does not follow that Chambers undermines West, because it is clear that in West, the kinds of escape crimes we were talking about and drawing support from were the active, violent escape crimes not at issue in Chambers.

The failure-to-report crime addressed by the Supreme Court in Chambers is wholly unlike the Utah failure-to-stop crime at issue here. First, as the Court noted in Chambers, the Illinois failure-to-report crime "amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue" in the enumerated crimes in the ACCA. Id. (quotation marks omitted.) To violate the Utah statute, on the other hand, an individual must "operate [a] vehicle in willful or wanton disregard of the [police officer's] signal" or "attempt to flee or elude" a police officer. Utah Code § 41-6a-210(1)(a)(i)-(ii). Either prong of the statute requires deliberate

10

action—a far cry from a mere failure to appear at a prison. Second, as we noted in West, a violation of either prong of the Utah statute by definition will occur in the physical presence of a police officer, see 550 F.3d at 964-65, while a failure to report to a penal institution will inherently not involve the physical presence of police officers, see Chambers, 129 S. Ct. at 692.

Third, violation of the Utah statute is far more likely to endanger third parties. The Illinois statute in Chambers could be violated outside the presence of third parties altogether. The Utah statute, on the other hand, requires that a police officer be present and that the violator drive "so as to interfere with or endanger the operation of any vehicle or person" or "attempt to flee or elude . . . by vehicle or other means." Utah Code § 41-6a-210(1)(a)(i)-(ii). In the latter situation, third parties are both far more likely to be present, and far more likely to be endangered, than in the former. Fourth and finally, as the Supreme court noted, "[w]hile an offender who fails to report must of course be doing something at the relevant time, there is no reason to believe that the something poses a serious potential risk of physical injury." Chambers, 129 S. Ct. at 692 (emphasis in original). As we noted in West, however, the requirement that a violation of the Utah statute occur in the presence of a police officer "poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the officer, other occupants of the vehicle, and even bystanders." 550 F.3d at 964-65 (quotation marks omitted).

11

In sum, then, the Illinois failure-to-report statute at issue in <u>Chambers</u> was markedly different from the Utah crime considered in <u>West</u>. Therefore, the Supreme Court's holding that failure-to-report escape crimes are not crimes of violence does not undermine this court's conclusion in <u>West</u> that violation of the Utah failure-to-stop statute is a crime of violence.

Notably, the <u>West</u> panel anticipated the possibility that the Supreme Court might overrule the Tenth Circuit's blanket all-escapes-are-violent-crimes rule, and insulated its decision accordingly. In the words of the panel:

> Even if the Supreme Court concludes that an escape conviction does not categorically present a serious potential risk of physical injury to another, we would conclude that a Utah conviction for failing to obey an officer's command would categorically present a serious potential risk of physical injury to another. Such a conviction under Utah law will always involve the use of a motor vehicle. It will always involve an overt, rather than covert, disobedience of an officer's command and will occur directly in the officer's presence. And it will likely occur in the presence of innocent and unsuspecting bystanders.

<u>Id.</u> at 964 n.9. We agree today with the <u>West</u> panel's assertion; the Supreme Court's decision in <u>Chambers</u> does not overrule or undermine <u>West</u>, and it remains the law of the Tenth Circuit.

We finally note that, although there is a division of authority on the issue, our decision is in accord with three other circuits to have considered vehicular fleeing crimes post-<u>Chambers</u>. See <u>United States v. Young</u>, 580 F.3d 373, 381 (6th Cir. 2009) (holding conviction under Michigan's fleeing-and-eluding statute is a crime of violence); <u>United States v. Hudson</u>, 577 F.3d 883, 886 (8th Cir. 2009) (holding that resisting arrest by

12

fleeing in a vehicle under Missouri law is a crime of violence); United States v. Harrimon, 568 F.3d 531, 537 (5th Cir. 2009) cert. denied, No. 09-6395, 2009 WL 2920814 (U.S. Dec.14, 2009) (holding that Texas conviction for fleeing by vehicle is a crime of violence).  But see United States v. Tyler, 580 F.3d 722, 725 (8th Cir. 2009) (holding that fleeing a peace officer in a vehicle under Minnesota law is not a crime of violence); United States v. Harrison, 558 F.3d 1280, 1301 (11th Cir. 2009) (holding that willful fleeing under Florida law is not a crime of violence).

### C.      Under West, Wise's Utah Conviction Was for a Crime of Violence

With West's precedential force reaffirmed, it becomes a simple matter to dispose of Wise's first claimed error in his sentencing.  Under West, Wise's 2006 Utah conviction for failure to stop at the command of a police officer was categorically a conviction for a crime of violence.  See West, 550 F.3d at 971.  Therefore, the district court was correct to elevate Wise's base offense level to twenty under USSG § 2K2.1(a)(4).

### II.    The District Court Erred in Not Assigning Criminal History Points for Wise's 2006 Conviction, but This Error Does Not Invalidate Wise's Sentence

As noted above, the district court, adopting the PSR, did not assign any criminal history points to Wise for his 2006 conviction for violation of Utah Code § 41-6a-210.  According to application note 10 to § 2K2.1, "for purposes of applying subsection (a)(1), (2), (3), or (4)(A), use only those felony convictions that receive criminal history points

13

under § 4A1.1(a), (b), or (c)." USSG § 2K2.1 cmt. n. 10 (emphasis added).[6] Wise

should have received two criminal history points for the 2006 conviction, as his sentence

for that offense was greater than sixty days but less than thirteen months, but the PSR did

not assign him any points for the conviction. USSG § 4A1.1(b) ("Add 2 points for each

prior sentence of imprisonment of at least sixty days . . . ."). Because he did not receive

any criminal history points, however, Wise argues that the district court erred by using

the 2006 conviction to enhance his base offense level to twenty under § 2K2.1(a)(4)(A).

The question thus presented is: when a defendant's prior conviction merits criminal

history points, but the defendant does not receive those points, and the district court

nevertheless imposes a sentence taking into account that prior conviction to set the

offense level, has the district court committed reversible error? We review this issue de

novo. See Charles, 576 F.3d at 1066.

　　While a question of first impression in this circuit, the Fourth Circuit faced a very

similar question in United States v. Battle, 499 F.3d 315 (4th Cir. 2007), and answered it

in the negative. In that case, the district court had not assigned the defendant criminal

history points for an offense that it believed fell outside the allowable timeframe under

---

[6] While this instruction is in the notes to the guideline, rather than the text itself, we have
held that "[c]ommentary interpreting the sentencing guidelines is binding on the federal
courts unless it violates the Constitution or a federal statute, or is inconsistent with the
guideline it interprets." United States v. Farnsworth, 92 F.3d 1001, 1007 (10th Cir.
1996). In Farnsworth, we held the predecessor note to application note 10 consistent with
§ 2K2.1, and thus binding. See id.

14

§ 4A1.2(e)(2).[7] Id. at 325. Despite not assigning the defendant any criminal history points for the offense, the district court apparently used it as a qualifying "controlled substance offense" justifying elevating the defendant's base offense level to twenty-four under § 2K2.1(a)(2). Id. at 326. The defendant thus argued on appeal that the district court erred in using the conviction to elevate his base offense level.

The Fourth Circuit agreed that "if the district court correctly assigned no criminal history points for the [earlier] offense, then the district court erred in applying § 2K2.1(a)(2)." Id. at 326 (emphasis omitted, emphasis added). But it was the district court's decision not to assign criminal history points that was in error. While the defendant's arrest for the earlier crime had occurred outside the ten-year window, the date his sentence was imposed—the operative date under § 4A1.2(e)(2)—was within that window. Id. Therefore, while the district court erred in failing to assign criminal history points for the offense, its application of § 2K2.1(a)(2) was correct. Id. ("Appellant had two prior felony controlled substance offense convictions . . . , both of which received or should have received criminal history points.") (emphasis added). Therefore the court affirmed the district court's calculation of the defendant's base offense level. Id.

This case is analogous to Battle. In Battle, the district court failed to assign criminal history points because it erroneously believed doing so was barred by lapse of

_____

[7] "Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." U.S.S.G. § 4A1.2(e)(2) (emphasis added).

15

time. Here, while the record reveals no affirmative reason why Wise did not receive criminal history points for his 2006 conviction, we can make an educated guess based on the PSR. Alongside each prior crime in the PSR is a notation of which provision of the guidelines the probation office applied to the conviction. In reference to the 2006 conviction, the PSR points to § 4A1.2. Subsection (c) of § 4A1.2 lists several categories of offenses that should not receive criminal history points, including "[c]areless or reckless driving" and "[h]indering or failure to obey a police officer." USSG § 4A1.2(c)(1). As Wise's 2006 conviction was for failure to stop at the direction of a police officer, the probation office likely considered this an offense that fell into § 4A1.2(c).

A closer reading of § 4A1.2(c), however, shows that that guideline should not have been applied to exclude Wise's 2006 conviction. The subsection begins "[s]entences for <u>all felony offenses</u> are counted." Id. (emphasis added). It goes on to instruct that "[s]entences for misdemeanor and petty offenses are counted, except as follows," and lists a number of exceptions, including those mentioned above. Id. The guideline also indicates that even misdemeanor convictions for the excepted crimes should be counted, if "the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days." § 4A1.2(c)(1)(A).

Because Wise's 2006 conviction was for a third-degree <u>felony</u>, and because it carried a jail sentence of 180 days, § 4A1.2(c)'s exclusion for misdemeanors and petty offenses should not have been applied to this conviction at all. Rather, two criminal

16

history points should have been assigned to Wise for the conviction under § 4A1.1(b), as his sentence exceeded sixty days, but was less than one year and one month. See USSG § 4A1.1. The language of § 4A1.1(b) is mandatory ("Add 2 points"), and the district court did not have discretion to decline to assign Wise two criminal history points for his 2006 conviction. Thus, as in Battle, the district court's error was in failing to assign criminal history points for the offense, rather than in calculating the relevant offense guidelines range.

Further, the failure to assign Wise criminal history points for his 2006 conviction did not change his criminal history category, and thus had no effect on his overall sentence. Even without the two points he should have received for the 2006 conviction, Wise's final criminal history score was fourteen, which is one more than necessary to put him in the highest criminal history category of VI. Two more criminal history points, therefore, would not have changed his criminal history category, or his final guideline range.

In sum, then, we hold that while the district court erred by not assigning criminal history points to Wise for his 2006 Utah felony conviction, that error did not affect either Wise's proper base offense level or his criminal history category. Therefore, we affirm the district court's calculation of Wise's offense level under § 2K2.1(a)(4), notwithstanding its failure to assign him criminal history points for the 2006 offense.

17

## **Conclusion**

For the reasons set out above, we AFFIRM the district court's determination of Wise's sentence.