**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUSTON DAVID JACKETT,

Defendant-Appellant.

No. 14-8006
(D.C. No. 1:13-CR-00070-ABJ-2)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.

---

Defendant-Appellant Juston Jackett was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He contends that his sentencing range, calculated pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"), was improperly adjusted upward because his prior conviction under 21 U.S.C. § 843(a)(6) for aiding and abetting the unlawful possession of chemicals was not a "controlled substance

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

offense" within the meaning of U.S.S.G. § 2K2.1(a)(4)(A). Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we **reverse** the district court's sentencing order and **remand** the case to the district court with instructions to re-sentence Mr. Jackett consistent with the reasoning set forth herein.

## I

Mr. Jackett pleaded guilty to a single count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). His presentence report ("PSR")—prepared by the United States Probation Office, using the 2012 version of the U.S.S.G.—increased Mr. Jackett's base offense level from fourteen to twenty under U.S.S.G. § 2K2.1(a)(4)(A) because the PSR found that Mr. Jackett had a prior felony conviction for a "controlled substance offense." The definition of that term—as employed in U.S.S.G. § 2K2.1(a)(4)(A)—is set forth in another Guidelines provision, U.S.S.G. § 4B1.2(b); that provision and its application note 1 are expressly adopted by cross-reference as the controlling definitional touchstones. *See* U.S.S.G. § 2K2.1 cmt. n.1; *id.* § 4B1.2 cmt. n.1.

After reducing his base offense level by three levels to account for Mr. Jackett's acceptance of responsibility, including his timely notice of his guilty plea, the PSR computed Mr. Jackett's criminal history points and assigned him to a criminal history category of V. His offense level and criminal history category

correlated to an advisory Guidelines range of eighty-four to 105 months.

The PSR's finding of a previous controlled substance offense was based on a 2004 conviction. Regarding that conviction, Mr. Jackett was initially charged in 2003 in an indictment count (i.e., Count Eight) alleging, in pertinent part, that he aided and abetted, "with the intent to manufacture methamphetamine," the unlawful possession of "chemicals . . . used to manufacture a controlled substance, namely[] methamphetamine, . . . knowing and having reasonable cause to believe" that the chemicals would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6). R., Vol. II, at 84–85 (Indictment, filed Nov. 20, 2003). In short form, Mr. Jackett was charged in the relevant indictment count with unlawful possession of chemicals (with a culpable mental state) that are used in the manufacture of methamphetamine.

Mr. Jackett proceeded to trial and was convicted in 2004;[1] the jury specifically found that Mr. Jackett possessed "[l]ess than 5 grams of Ephedrine/Pseudoephedrine." *Id.* at 91. Each of these is a "listed chemical" under 21 U.S.C. §§ 802(33) and 802(34)—that is, as germane here, a chemical that has been "specified by regulation of the Attorney General as a chemical that

---

[1] Mr. Jackett was also found not guilty (i.e., acquitted) on two separate counts of the indictment underlying his 2004 conviction: (1) conspiracy to manufacture methamphetamine (Count One), and (2) conspiracy to possess a "List I chemical" (Count Seven). R., Vol. II, at 89–90 (Verdict Form, filed July 31, 2004).

3

is used in manufacturing a controlled substance." 21 U.S.C. §§ 802(34)(C) (ephedrine), (K) (pseudoephedrine).

In a filed document and at his sentencing hearing for his firearm offense, Mr. Jackett objected, *inter alia*, to the offense level of twenty because, as he saw it, his prior conviction under 21 U.S.C. § 843(a)(6) did not qualify as a controlled substance offense within the meaning of U.S.S.G. § 2K2.1(a)(4)(A). Absent the enhancement, reasoned Mr. Jackett, his base offense level would have been significantly lower—specifically, a base offense level of twelve. In defending the enhancement, the government proffered certain court documents from the 2003–04 prosecution—specifically, the indictment and the verdict form. Without relying on these documents, however, the district court rejected Mr. Jackett's argument.

Specifically, the district court found that the provision of application note 1 of U.S.S.G. § 4B1.2 that classifies as a controlled substance offense the unlawful possession of a prohibited "flask" or "equipment," as proscribed by 21 U.S.C. § 843(a)(6), was broad enough to encompass Mr. Jackett's offense, unlawful possession of chemicals used to manufacture a controlled substance, which also was prohibited by 21 U.S.C. § 843(a)(6). *See* R., Vol. III, at 24–25 (Tr. Sentencing Hr'g, dated Jan. 10, 2014) ("[T]he reference in the application note is sufficient to encompass . . . the chemical that was found or was the subject matter of the jury's consideration of Mr. Jackett's case.").

4

Based on Mr. Jackett's success in challenging unrelated Guidelines matters (which are not at issue here), the court did downwardly adjust his advisory Guidelines range, finding that it should be fifty-one to sixty-three months. *See id.* at 76. The court then sentenced Mr. Jackett to fifty-five months' imprisonment, i.e., near the low end of the advisory Guidelines range. Mr. Jackett timely appealed from the district court's sentencing order and now asks us to reverse and remand for re-sentencing.

**II**

**A**

We review the propriety of a district court's computation of the advisory Guidelines sentence under an overarching abuse-of-discretion standard; computation errors are procedural in nature. *See, e.g.*, *United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011) ("We review the district court's sentencing decision under an abuse of discretion standard. . . . In general, a procedural challenge relates to the 'method by which the sentence is calculated.'" (citations omitted) (quoting *United States v. Wittig*, 528 F.3d 1280, 1284 (10th Cir. 2008))).

In this procedural analysis, "[w]e review de novo any legal questions in a district court's application of the Guidelines," and we review factual findings for clear error. *United States v. Serrato*, 742 F.3d 461, 468 (10th Cir.), *cert. denied*, --- U.S. ----, 134 S. Ct. 2739 (2014). The ultimate determination of whether a defendant's prior offense is a controlled substance offense is a legal one. *See*

5

*United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010) (concluding that

whether a prior conviction is a "crime of violence" under U.S.S.G. § 2K2.1 is a

"question of law that we review de novo"); *see also United States v. Cherry*, 572

F.3d 829, 831 (10th Cir. 2009) ("We review de novo whether the facts found by

the court support the application of the guideline it selected."); *United States v.*

*Topete-Plascencia*, 351 F.3d 454, 460 (10th Cir. 2003) ("We review a district

court's interpretation of the Guidelines *de novo*."); *cf. United States v. Karam*,

496 F.3d 1157, 1166 (10th Cir. 2007) (noting that whether the defendant qualified

as a "career offender" was a question of law, which turned in that case on whether

his "prior conviction was properly classified as a controlled substance offense").[2]

---

[2]    A panel of our court more directly reached this conclusion regarding
the controlled-substance-offense enhancement (i.e., that the availability *vel non* of
this enhancement is a legal question) in a nonprecedential decision which we find
persuasive. *See United States v. Plakio*, 150 F. App'x 778, 779 (10th Cir. 2005)
(per curiam) (conducting a de novo legal analysis).  At oral argument, the
government suggested that when the district court reaches its ultimate
determination regarding a controlled-substance-offense issue under the modified
categorical approach (which we discuss *infra*)—which involves review and
consideration of a limited set of court documents—then the court's conclusion
constitutes a factual finding subject to clear-error review.  However, when
pressed to provide us with legal authority to support that proposition, the
government could not do so.  Thus, even if the government were accurately
characterizing the district court's decisionmaking methodology as involving the
modified categorical approach, we would be inclined to view the government's
argument with skepticism and find no reason to deviate from the clear import of
our authority cited above, which indicates that the ultimate question of whether a
prior conviction qualifies as a controlled substance offense—including whether
the facts found by the sentencing court support such an enhancement—is a legal
one.  *See, e.g.*, *United States v. Johnson*, 630 F.3d 970, 975 (10th Cir. 2010)
(continued...)

6

The government bears the burden at sentencing to establish the evidentiary basis for the controlled-substance-offense enhancement by a preponderance of the evidence. *See, e.g.*, *United States v. Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008) ("The government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement."); *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir. 1990) ("[T]he quantum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence and the burden of proof generally is allocated to the government for sentence increases . . . ."); *see also United States v. Rice*, 52 F.3d 843, 848 (10th Cir. 1995) (noting that "the government bears the burden of proof for sentence increases" and assessing whether the government satisfied that burden under a preponderance-of-the-evidence standard).

---

[2](...continued)
("There were . . . two prior convictions from Missouri, one for possession of a controlled substance with intent to deliver . . . . [Defendant] now challenges whether those should have been counted under [a statutory sentencing enhancement] . . . . Here this is a *legal question*." (emphasis added)). However, for the reasons discussed *infra*, we actually do not agree with the government's characterization of the district court's methodology; although the government proffered certain documents from the 2004 conviction that the court *could have* relied upon in performing a modified categorical analysis, as we see it, the court eschewed relying on those documents and focused its analysis instead on the terms of the statute of conviction, 21 U.S.C. § 843(a)(6), and on those of application note 1 of U.S.S.G. § 4B1.2. Therefore, in addition to being unsupported, the government's standard-of-review argument is wholly inapposite.

7

**B**

The question presented by this appeal is whether Mr. Jackett's 2004

conviction under 21 U.S.C. § 843(a)(6) provides the foundation for application of

the controlled-substance-offense enhancement of U.S.S.G. § 2K2.1(a)(4)(A).

After illuminating the content of this enhancement, we will explain why the

district court committed reversible error by conducting a flawed categorical

analysis in reaching an affirmative answer to this question.

**1**

Under the sentencing guideline governing unlawful possession of a weapon,

the base offense level is twenty if, as pertinent here, "the defendant committed

any part of the instant offense subsequent to sustaining one felony conviction

of . . . a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). As noted

above, this guideline actually takes the meaning of controlled substance offense

from another provision of the U.S.S.G. and its related application note 1.

Specifically, U.S.S.G. § 2K2.1(a)(4)(A) cross-references U.S.S.G. § 4B1.2(b),

which defines a controlled substance offense, in relevant part, as "an offense

under federal or state law, punishable by imprisonment for a term exceeding one

year, that prohibits the manufacture . . . of a controlled substance . . . or the

possession of a controlled substance . . . with intent to manufacture . . . ." *Id.*

8

§ 4B1.2(b).[3] Notably, this definition, by its terms, seemingly requires that a controlled substance offense involve (1) a controlled substance, and (2) a mens rea of intent.

However, application note 1 to U.S.S.G. § 4B1.2—which is also explicitly cross-referenced in and adopted by U.S.S.G. § 2K2.1(a)(4)(A)—has interpreted the scope of the guideline's text broadly to cover unlawful possession of items other than controlled substances. As relevant here, that provision includes within the definition of a controlled substance offense the unlawful possession of a listed chemical with intent to manufacture a controlled substance, as proscribed by 21 U.S.C. § 841(c)(1), and the unlawful possession of a prohibited flask or equipment, as proscribed by 21 U.S.C. § 843(a)(6). U.S.S.G. § 4B1.2 cmt. n.1. This application note also makes clear that a controlled substance offense "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.*

Importantly, however, even though this application note has broadly interpreted the definition of controlled substance offense to include the unlawful possession of items that themselves are not controlled substances, it has not

---

[3] The definition also directly prohibits the "import, export, distribution, or dispensing of a controlled substance." U.S.S.G. § 4B1.2(b). These elements of the definition are not at issue in this case: there is no allegation that Mr. Jackett was ever convicted of a crime that involved importing, exporting, distributing, or dispensing of a controlled substance.

purported to expand the mens rea that is required for a controlled substance offense specified in U.S.S.G. § 4B1.2(b)'s text—that is, a required mens rea of intent. *See id.* § 4B1.2 cmt. n.1 (including within the controlled-substance-offense definition possession of a "prohibited flask or equipment *with intent* to manufacture a controlled substance" and possession of a "listed chemical *with intent* to manufacture a controlled substance" (emphases added)).

## 2

In answering the controlled-substance-offense inquiry in the affirmative, the district court tacitly performed a categorical analysis, comparing the elements of the § 843(a)(6) offense identified in application note 1 of U.S.S.G. § 4B1.2 with Mr. Jackett's § 843(a)(6) offense of conviction. In doing so, it found a legally sufficient match. Under the traditional categorical approach, the court "looks to the words of the statute [of conviction] . . . rather than to the conduct of any particular defendant convicted of that crime." *United States v. McConnell*, 605 F.3d 822, 825 (10th Cir. 2010) (internal quotation marks omitted) (applying the categorical approach to U.S.S.G. § 4B1.2(a)'s definition of a "crime of violence"); *see United States v. Dennis*, 551 F.3d 986, 988 (10th Cir. 2008) ("This pure categorical approach does not allow a court to evaluate the underlying facts of the defendant's conduct.").

We do not question the district court's resort in the first instance to the categorical approach in endeavoring to determine whether Mr. Jackett qualified

for a controlled-substance-offense enhancement. *See United States v. Ventura-Perez*, 666 F.3d 670, 673 (10th Cir. 2012) ("[T]he Supreme Court [has] stated that the sentencing court should ordinarily apply a 'categorical approach' . . . ."); *see also Efagene v. Holder*, 642 F.3d 918, 921 n.2 (10th Cir. 2011) (noting that the first analytical "step" is to determine if the categorical approach will "end the inquiry"). However, we are constrained to conclude that the categorical approach was not an adequate tool for the district court to use in determining whether Mr. Jackett warranted the enhancement. This is so because, under its plain terms, § 843(a)(6) encompasses more conduct than is specified in the U.S.S.G.'s controlled-substance-offense definition.

As dispositive here, this statutory breadth relates to the culpable state of mind or mens rea. Specifically, 21 U.S.C. § 843(a)(6) criminalizes unlawful possession with three distinct mental states or mentes reae—*viz.*, "knowing, intending, or having reasonable cause to believe." 21 U.S.C. § 843(a)(6). However, it is pellucid from the text of the adopted definitional guideline (U.S.S.G. § 4B1.2) and its related application note (note 1) that in order to qualify as a controlled substance offense, a possession conviction must involve the mens rea of intent—that is, as germane here, an "*intent* to manufacture a controlled substance." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). It ineluctably follows

11

that a conviction involving a lesser mens rea,[4] such as knowing or having

reasonable cause to believe, would *not* qualify as a controlled substance offense.

With this understanding of § 843(a)(6)'s breadth in mind, we conclude that

the district court's categorical analysis was inadequate and fatally flawed.  The

district court found that the provision of application note 1 that classifies

unlawful possession of a "flask or equipment," in violation of 21 U.S.C.

§ 843(a)(6), as a controlled substance offense was broad enough to include Mr.

Jackett's prior conviction under the same statute.  However, even putting aside

the seemingly problematic circumstance that this application note provision

references different conduct—unlawful possession of a flask or other proscribed

equipment—than the conduct at issue in Mr. Jackett's 2004 conviction, i.e.,

unlawful possession of listed chemicals, the district court's categorical analysis

would still face an insurmountable obstacle: this application note provision

requires that the possession be "with intent to manufacture a controlled

substance."  U.S.S.G. § 4B1.2 cmt. n.1.  But, as noted, only one of the three

mental states specified in § 843(a)(6) is intent; the other two would not support a

controlled-substance-offense enhancement.  Accordingly, to the extent that the

district court rested the controlled-substance-offense enhancement on application

---

[4]        *See United States v. Manatau*, 647 F.3d 1048, 1051 (10th Cir. 2011)
(comparing "inten[t]" to "knowledge or some lesser *mens rea* standard" (internal
quotation marks omitted)).

note 1's flask-or-equipment provision, its analysis was grievously mistaken.

But the problematic implications of the district court's categorical analysis had the potential to extend beyond the flask-or-equipment provision. Specifically, because § 843(a)(6)'s language includes two ineligible mentes reae, to the extent that the court solely restricted its view to § 843(a)(6)'s language in comparing Mr. Jackett's 2004 conviction with the controlled-substance-offense Guidelines definition—which was required under the categorical approach—it would never have been able to discern whether Mr. Jackett qualified for the controlled-substance-offense enhancement. In other words, insofar as the court limited its focus solely to § 843(a)(6)'s language, it would not have been able to tell whether Mr. Jackett's 2004 conviction necessarily involved the mens rea of intent—which would have supported the controlled-substance-offense enhancement—or whether it involved one or both of the other two statutory mentes reae, which would *not* have warranted the enhancement. Accordingly, we conclude that the court erred by stopping its analysis there.

As we see it, the district court should have examined whether the modified categorical approach would yield a definitive answer regarding Mr. Jackett's eligibility for the controlled-substance-offense enhancement. The modified categorical approach is a subspecies of the categorical approach. *See, e.g.*, *Efagene*, 642 F.3d at 921 n.2 ("[T]he modified categorical approach[] [is] a step taken only if the categorical approach does not end the inquiry . . . ."). As the

13

parties at least assume for purposes of argument here, given the divisible nature of § 843(a)(6) and its breadth, the district court *could have* elected to apply the modified categorical approach. *See Descamps v. United States*, --- U.S. ----, 133 S. Ct. 2276, 2281–85 (2013) (describing the application of the modified categorical approach to divisible statutes, such as this one, that include elements both within and outside of a generic offense); *United States v. Smith*, 433 F.3d 714, 718 (10th Cir. 2006) (noting that we must resort to this approach "[w]here, as here, the statutory language defining the underlying offense is ambiguous or broad enough to criminalize some acts that fall within the Guideline and some that do not"). And we believe that the district court *should have* done so—*viz.*, it should have taken the step of applying the modified categorical approach to the controlled-substance-offense question.

Notably, under our precedent, even if there is a mismatch between the precise terms of the statute of conviction and those of the U.S.S.G.'s controlled-substance-offense definition, a defendant may still qualify in certain circumstances for the controlled-substance-offense enhancement. *See Smith*, 433 F.3d at 716–18. Under *Smith*, a defendant is subject to the enhancement if *the conduct* of which he was convicted *could have been charged* as a controlled substance offense. *See id.* at 717 ("[T]he application notes can be understood as including within the Guideline *convictions for conduct* that could have been charged as a controlled substance offense . . . ." (emphasis added)). More

14

specifically, because the phrase "'offense under federal or state law' [of U.S.S.G. § 4B1.2(b)] encompasses more than a strict reference to the terms of the statute of conviction," a court must determine whether a defendant was "convict[ed] [of] conduct that could have been charged as a controlled substance offense, or as aiding and abetting . . . a controlled substance offense." *Id.*

In applying a modified categorical approach under *Smith*, a court goes beyond the statutory terms in seeking to determine whether *the conduct* forming the basis for a defendant's conviction could have been charged as a controlled substance offense. *See id.* But the court must limit such an inquiry to a finite set of documents: specifically, it is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to *some comparable judicial record* of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005) (emphasis added); *see Johnson v. United States*, 559 U.S. 133, 144 (2010) (noting that the modified categorical approach "permits a court to . . . consult[ ] the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms"); *Smith*, 433 F.3d at 718 (noting that in determining whether the defendant was convicted of conduct that could have been charged as a controlled substance offense, "we must look to the charging documents, the judgment, the plea agreement, plea colloquy, and

15

other findings of fact adopted by the defendant upon entering the plea").

"Such review does not involve a subjective inquiry into the facts of the case . . . ." *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009); *see Descamps*, 133 S. Ct. at 2285 (noting that the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime"). And the court should seek to determine from these documents what the factfinder—in this instance, the jury—*necessarily* found in convicting the defendant of the prior crime. *See Descamps*, 133 S. Ct. at 2290 (noting that when a sentencing court applies the modified categorical approach, it "need only check the charging documents and instructions . . . to determine whether in convicting a defendant under that divisible statute, the jury *necessarily* found that he committed the [enhancement]-qualifying crime" (emphasis added)); *United States v. Trent*, 767 F.3d 1046, 1061 (10th Cir. 2014) (quoting *Descamps* and finding that our task is to examine the "alternative elements" of a statute of conviction in finding which elements a "jury *necessarily* found" (emphasis added) (internal quotation marks omitted)), *cert. denied*, --- U.S. ----, 135 S. Ct. 1447 (2015).

In our view, the district court should have proceeded to apply a modified categorical approach in an effort to discern whether Mr. Jackett was convicted of a controlled substance offense. In failing to do so, the court erred. At this juncture, we cannot definitively determine whether this error is harmless. In this

regard, we do not consider it wise to endeavor ourselves to perform the requisite modified categorical analysis in the first instance. Nor do we offer any predictions or other thoughts regarding the ultimate outcome of such an inquiry. Instead, we simply reverse and remand the case to the district court, directing it to re-sentence Mr. Jackett after conducting a modified categorical analysis.

## III

For the above reasons, we **REVERSE** the district court's sentencing order and **REMAND** the case with instructions to the district court to re-sentence Mr. Jackett in a manner consistent with this order and judgment: specifically, the court should determine under a modified categorical approach whether Mr. Jackett's 2004 conviction supports a controlled-substance-offense enhancement under U.S.S.G. § 2K2.1(a)(4)(A).

Entered for the Court


Jerome A. Holmes
Circuit Judge

17